# Exhibit A

**SUPREME COURT OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| Paul Backer, )<br>     Plaintiff, Pro Se )<br><br>       -against- )<br><br>Wiebe Draijer )<br>Cooperatieve Rabobank U.A. )<br>Milbank, Tweed, Hadley & McCloy )<br>Utrecht-America Holdings, Inc. )<br>Rabobank Nederland New York Branch )<br>Rabo Securities USA, Inc. )<br>Rabobank N.A. )<br>Mark Borrecco )<br>David R. Gelfand )<br>Rajiv Singh )<br>Andrew Sherman )<br>John Doe 1-5 )<br>     Defendants. ) | Index No. 101697-17<br><br>**COMPLAINT**<br>**AND DEMAND**<br>**FOR JURY TRIAL** |

Plaintiff Paul Backer, Pro Se ("**Plaintiff**"), as and for his complaint against

defendants Mr. Wiebe Draijer, Cooperatieve Rabobank U.A. ("**Rabobank**"),

Milbank, Tweed, Hadley & McCloy ("**Milbank**"); Utrecht-America Holdings, Inc.,

Rabobank Nederland New York Branch, et al. (collectively, "**Defendants**")[1] alleges,

---

[1].    Defendants Wiebe Draijer, Cooperatieve Rabobank U.A. ("**Rabobank**"), Utrecht-America Holdings Inc., Rabobank Nederland New York Branch, Rabo Securities USA, Inc., Rabobank N.A., Mark Borrecco, Andrew Sherman and Rajiv Singh are collectively "**Rabobank Defendants**".
    Defendants David R. Gelfand and the firm of Milbank, Tweed, Hadley & McCloy are house counsel to Rabobank Defendants and are collectively "**Milbank Defendants**".

upon knowledge as to himself and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1.     Mr. Wiebe Draijer ("**Draijer**"), Rabobank CEO and Executive Board Chairman ("**CEO**") is the top Rabobank executive tasked with the protection of whistleblowers and their identity.[2]

2.     As Rabobank CEO, Draijer knows the ethical and legal impermissibility of suppressing whistleblowing and regulatory reporting ("**Whistleblowing**").[3]

3.     Draijer publicly proclaims his leadership on whistleblower protection beyond statutory and regulatory requirements that "don't go far enough".[4]

4.     This is empty posturing and a lie, Draijer led Defendants in using Rabobank's trillion dollar resources to suppress and punish Whistleblowing.

---

[2]. "In exceptional cases, and if he/she sees cause to do so, the Trusted Person can, without prior consultation with the Trusted Committee, notify the chairman of the executive board ... regarding the report." Rabobank Regulation for Reporting Abuses. https://www.rabobank.com/en/images/klokkenluiderregeling-19-05-2016-eng-final.pdf

[3]. New York State Department of Financial Services ("**NYSDFS**") and UK regulators investigate Jes Staley, Barclays' CEO's misconduct toward whistleblower. Barclays' whistleblowing chief filed suit and resigned. https://www.ft.com/content/e07c8cd4-9a0e-11e7-a652-cde3f882dd7b

[4]. "Working in an open culture is not only pleasant, it also benefits the quality of our work. You feel free to broach sometimes difficult issues, to provide feedback, to express doubts, to voice opinions." And "Partly due to the huge social interests involved, we are faced with many laws and rules... But legislation and regulations do not always provide an answer. And sometimes we feel they do not go far enough and we have guidelines of our own." Wiebe Draijer's foreword to "This is Us", Code of Conduct, Rabobank, pp.4 and p. 37. https://www.rabobank.com/en/images/code-of-conduct-rabobank-en.pdf

101697/2017 SUMMONS AND COMPLAINT AND DEMAND FOR JURY TRIAL

5.   Draijer led Defendants' vicious abuse of process against Plaintiff to suppress Whistleblowing, explicitly attacked Whistleblowing as grounds for ruinous financial damages and sanctions.[5]

6.   Defendants led by Draijer feared and strategically abused process to attack Plaintiff's Whistleblowing they knew to be true and actionable.[6]

7.   Specifically, Defendants demanded financial damages and sanctions for "threat-or possible actual filing of regulatory and/or ethics complaints against Rabobank, its worldwide affiliates..."[7], "communications to regulators in Europe and the United States..."[8], "filing-of regulatory and/or ethics complaints against Rabobank, its global affiliates and employees..."[9],

---

[5]. "We expect the relief sought to include all attorneys' fees and costs incurred in responding to the complaint and any motion to dismiss the Rabobank Defendants may be required to file. We expect the amount to be significant..." Milbank letter to Plaintiff, 09/20/2016. Available on request.

"Significant" is quite the understatement. Mr. David R. Gelfand reportedly bills $1,000 - 1,500 per hour and was involved in litigation on Milbank's illegal billing. Combined, the Milbank team led by David R. Gelfand bills thousands of dollars per hour. Defendants demanded astronomical (to Plaintiff) profits from their own abuse of process suppressing Whistleblowing.

[6]. Untrue or irrelevant Whistleblowing could not impact Defendants, it would not have been acted on by an Agency. Most likely, a company subject to untrue or non-actionable Whistleblowing would never be advised by an Agency that a report was made, much less suffer some injury.

[7]. 16-cv-06577-PGG, U.S. District Court for the Southern District of New York ("**SDNY**"), August 19, 2016 ("**Rabobank Suit**"). Memorandum of Law in Support of the Moving Rabobank Defendants' Motion to Dismiss, Document 29, 12/12/16, p. 9 of 35.

[8]. Rabobank Suit, Memorandum of Law in Support of the Moving Rabobank Defendants' Motion for Sanctions Pursuant to Rule 11, Document 33, 12/12/16, p. 5 of 31.

[9]. Ibid, p. 6 of 31.

Printed: 12/5/201

"…suggested that he would approach regulators in the US…"[10]

8.      Defendants claimed "attempting to initiate regulatory proceedings against Rabobank" as grounds to "…deny Plaintiff's motion for leave to file the PSAC, dismiss the AC with prejudice, and impose Rule 11 sanctions on Plaintiff."

9.      Defendants abused legal process, motions under the Federal Rules of Civil Procedure ("**Rules**")[11] for primary purpose of achieving objectives unrelated to motion practice under the Rules to achieve a collateral purpose beyond those allowed by the motions: extort[12], materially and irreparably damage Plaintiff to force him to drop Rabobank Suit, punish Plaintiff for Whistleblowing, suppress Whistleblowing by Plaintiff and others, undermine regulatory and enforcement agencies ("**Agencies**").[13]

10.     "The deliberate premediated infliction of economic injury without economic or social excuse or justification is an improper objective which will give rise to a cause of action for abuse of process." *Board of Education of Farmingdale*

---

[10]. Ibid, p. 17 of 31.

[11]. Motions abusing process were filed as part of Rabobank Suit, a duly commenced litigation filed by Plaintiff in SDNY against Mr. Wiebe Draijer, Rabobank, and other Rabobank affiliated companies and persons for RICO, securities fraud and illegal actions that damaged Plaintiff.

[12]. Defendants repeatedly demanded that the Plaintiff abandon his litigation, Rabobank Suit to escape their relentless attack on Whistleblowing.

[13]. For a discussion of collateral purpose and harm after issued process, please see *Lukowski v. The County of Seneca*, United States District Court Western District of New York, 08-cv-6098, Document 47, 02/24/2009, p. 17 of 38, citing *Chamberlain v. Lishansky*, 970, F.Supp. 118, 121-22 (NDNY 1997) and Savino v. *City of New York*, 331 F.3d 63, 77 (2nd Cir. 2003)

*Union Free School District v. Farmingdale Classroom Teachers Association,*

*Inc., Local 1889, AFT AFL-CIO, et al.*, Court of Appeals of the State of New

York, 380 N.Y.S.2d 635, Dec. 29, 1975.

11.   Extensive persuasive authority exists that Defendants' on Plaintiff's livelihood

to suppress and punish Whistleblowing is actionable abuse of process.[14]

12.   Defendants' abuse of process was so meritless that their Rabobank Suit co-

defendants filed a clarification with SDNY to disavow it:

"For the avoidance of doubt, the Third-Party Financial Institution

Defendants file this clarification to confirm that they ... are not seeking

sanctions, damages, or other monetary relief, including such relief

based on Plaintiff's alleged whistleblowing and/or regulatory reporting

to regulatory and/or enforcement entities."[15]

13.   Defendants' inescapable knowledge of the complete lack of legal merit or

justification for their abuse of process is evidenced by their failure to provide

a case precedent, statute, regulation, academic, public policy or any other

authority supporting their attack on Whistleblowing.

---

[14]. "...the courts recognized an injury to business and business reputation as an improper
ulterior motive and abuse of process". *Poduska v. Ward*, United States Court of Appeals, First
Circuit, 895 F.2d 854, Feb. 8, 1990.
[15]. Clarification to the Third-Party Financial Institution Defendants' Joinder in Support of the
Moving Rabobank Defendants' Motion to Dismiss, *Rabobank Suit*, Document 70, 08/25/17, pp.
1-2.

14.    Defendants never requested reconsideration of existing precedent, policy or statute protecting Whistleblowing.

15.    Agencies recognize Whistleblowing as vital to their effectiveness[16] and punish suppression of Whistleblowing.[17]

16.    Research failed to show a prior instance in New York or elsewhere where licensed and regulated persons violated their licensing and regulatory obligations to litigate explicitly to suppress Whistleblowing to the Agencies that license and regulate them.[18]

17.    Rabobank, claiming nearly a trillion dollars in assets relied for years on profits from fraud, criminal and otherwise illegal conduct damaging Plaintiff, market integrity and persons.[19]

---

[16].  "Assistance and information from a whistleblower who knows of possible securities law violations can be among the most powerful weapons in the law enforcement arsenal of the Securities and Exchange Commission. Through their knowledge of the circumstances and individuals involved, whistleblowers can help the Commission identify possible fraud and other violations much earlier than might otherwise have been possible. That allows the Commission to minimize the harm to investors, better preserve the integrity of the United States' capital markets, and more swiftly hold accountable those responsible for unlawful conduct." https://www.sec.gov/whistleblower

[17].  https://www.dandodiary.com/2016/08/articles/uncategorized/the-sec-wants-you-to-know-that-it-intends-to-protect-the-rights-of-whistleblowers-to-come-forward/

[18].  Were Bernard L. Madoff, Enron and Worldcom able to similarly abuse process to suppress Whistleblowing, their global frauds would have claimed many more victims.  Harry Markopolos would face a lifetime of penury for reporting fraud by Mr. Madoff to Agencies.

[19].  2017, criminal complaint in the Netherlands - complicity in murder and aiding drug cartels, sued by the U.S. Federal Deposit Insurance Corporation ("**FDIC**"), assessed monetary penalty by the Office of the Comptroller of the Currency ("**OCC**").

Printed: 12/5/2017

18.   Whistleblowing is fatal to Rabobank fraud.  It led to Agency enforcement

actions, grand jury, $1 billion global penalty, admissions of criminal conduct

and criminal conviction of Rabobank executives in New York.[20]

19.   Rabobank criminal history, a decade of documented statutory violations make

---

(Netherlands criminal complaint)
https://www.banktrack.org/download/summary_on_the_complaint_against_rabobank/complaint_summary_gs_enconformato.pdf
(FDIC lawsuit)
https://www.reuters.com/article/us-fdic-libor/u-s-regulator-sues-16-banks-for-rigging-libor-rate-idUSBREA2D1KR20140314
(OCC monetary penalty)
https://buckleysandler.com/sites/default/files/Buckley%20Sandler%20InfoBytes%20Rabobank%20OCC%20Stipulation%20and%20Consent%20to%20the%20Issuance%20of%20an%20Order%20for%20a%20Civil%20Money%20Penalty%202017.03.27.pdf
    2016, grand jury on money laundering for international drug cartels, million dollar cash deposits near Mexican border, hindering government investigation, etc.
        http://www.garp.org/#!/risk-intelligence/all/all/a1Z400000033I5GEAQ
    2015, Rabobank Executive Board including defendant Wiebe Draijer entered agreement in New York with New York State Department of Financial Services ("**NYSDFS**") and Federal Reserve Bank of New York ("**FED NY**"), admit years of violating money laundering and banking law. https://www.federalreserve.gov/newsevents/pressreleases/files/enf20150702a1.pdf
    2013, Rabobank executives criminally prosecuted and convicted in New York.  Rabobank enters Deferred Prosecution Agreement with the U.S. Department of Justice admits wire fraud, pays a $1 billion fine for its global criminal conduct for profit.
        https://www.justice.gov/iso/opa/resources/976201310298727797926.pdf.
    Rabobank removed Laura Akahoshi, key Rabobank executive in the money laundering investigation from U.S. in 2013 to Rabobank's Utrecht, Netherlands HQ and then to "special assignments" in "Asia".  https://www.linkedin.com/in/laura-akahoshi-80752211/
    2006, 2008 and 2013, Rabobank violates money laundering and banking law.
(2006) reference in interview with former Rabobank executive, available on request
(2008) https://occ.gov/static/enforcement-actions/ea2008-003.pdf,
(2013) https://www.occ.gov/static/enforcement-actions/ea2013-191.pdf
[20]. Rabobank CEO Wiebe Draijer and the severe damage to Rabobank from exposure of its illegal conduct for profit.  David De Jong, Rabobank First-Half Profit Drops 39%, Hurt by Legal Charges, Bloomberg, August 18, 2016.  https://www.bloomberg.com/news/articles/2016-08-18/dutch-rabobank-profit-falls-39-on-legal-and-restructuring-costs

its abuse of process to escape Agency oversight by punishing and suppressing

Whistleblowing particularly threatening to market integrity and consumers.

## DEFENDANTS ABUSED PROCESS TO SUPPRESS

## WHISTLEBLOWING AND DAMAGE PLAINTIFF

20.   Defendants' abuse of process succeeded in its impermissible primary purpose,

extorted and damaged Plaintiff and suppressed Whistleblowing:

a.   Caused emotional distress, terrorized and endangered Plaintiff and his

family, including a 4 year old child by publishing to the world Plaintiff's

highly confidential transacting information.[21] Information wholly

irrelevant to the Rabobank Suit, provided by Plaintiff to Rabobank as

his fiduciary to close his account;[22]

b.   Suppressed Whistleblowing by Plaintiff;[23]

---

[21]. The most knowledgeable and therefore, most "dangerous" Rabobank whistleblowers have banking and other Rabobank relationships. Defendants led by Draijer acted to prove that Rabobank will publish information entrusted to it by a client to suppress Whistleblowing.

[22]. Information on a very large cash transaction including date, amount, receiving New York bank, Plaintiff's address, phone number and email. Defendants drew a roadmap for criminals to attack the Plaintiff and his family.

[23]. Staggering financial, professional, reputation and other damages from Defendants' abuse of process suppressed Whistleblowing, forced Plaintiff not to report Defendants' misconduct to New York State Attorney General, U.S. Department of Justice, U.S. Department of the Treasury - OCC, CFTC, FINRA and Financial Crimes Enforcement Network. Rabobank's abuse of process caused Plaintiff to stop providing Whistleblowing to SEC, NYSDFS, FDIC and other Agencies.

c. "Outed" Plaintiff, relentlessly "named and shamed" him as an attorney and whistleblower in documents published to the world, materially, irreparably and ongoingly damaged his livelihood and professional standing;[24]

d. Drained Plaintiff of resources by imposing massive, wholly avoidable costs and damages on the Plaintiff;

e. Publicly showing Defendants' willingness to do the "unthinkable", litigate expressly to punish whistleblowing intimidated others from Whistleblowing;[25]

f. Deprived Agencies of access to actionable information, enabling Rabobank Defendants to continue to profit from securities fraud, fraud and other illegal conduct for profit.[26]

21. Defendants' abuse of process violated their own published policies[27] and

---

[24]. Wiebe Draijer led Defendants in "snitches get stitches" abuse of process, relentlessly publishing that Plaintiff is an attorney and a Whistleblower.

[25]. Specific instances of expressed concern as to Rabobank retaliation available on request.

[26]. The role of David R. Gelfand and Milbank in attacking Agency capacity is particularly cynical. Milbank Defendants actively solicit and perform extensive legal work with and for Agencies and government entities while at the same time suppressed Whistleblowing to undermine Agencies.

[27]. RABOBANK RULES ON THE INTERNAL REPORTING OF MALPRACTICE, 2002, updated 2011. https://www.banktrack.org/download/160706_whistleblower_policy_pdf/160706-whistleblower_policy.pdf and https://www.rabobank.com/en/images/klokkenluiderregeling-19-05-2016-eng-final.pdf

directly attacked principles set forth in statutes, case law and public policy.[28]

22.     Defendants' concerted and systematic abuse of legal process, motions under

the Rules intended to and achieved impermissible primary purpose: suppress

Whistleblowing, extort Plaintiff, cause special damages, avoidable financial

damages, drain Plaintiff of resources, materially, ongoingly and irreparably

damaged Plaintiff's livelihood and professional standing, caused the

unnecessary loss of over 350 hours of professional time.[29]


## VENUE AND JURISDICTION

23.     Jurisdiction and venue lie with the Supreme Court of New York, County of

New York ("**Court**") under CPLR 302 and CPLR 503.[30]

---

[28]. An employment relationship never existed between Plaintiff and any defendant. However, New York legislative and judicial effort to protect employee whistleblowers illustrates public policy favoring whistleblowing. "In the 1980s, however, New York, like the vast majority of jurisdictions, enacted public policy whistleblower exceptions for both private and public employees. At-will whistleblowing employees in the private sector are protected ..." *Villarin v. Rabbi Haskel Lookstein School*, New York Supreme Court, Appellate Division First Judicial Department, 2012 NY Slip Op 02786, April 12, 2012.

[29]. Damages caused by Defendants' abuse of process include the costs of dedicated office space, furnishings, equipment, document production, travel, disposables, storage, disbursements, research facilities and assistance, legal research and assistance, permanent damage to professional standing and reputation, loss of specific employment opportunities, permanent and irreparable damage to ability to earn a livelihood in the profession of law, emotional distress and loss of over 350 hours of Plaintiff's professional time. But for Defendants' abuse of process, the Plaintiff would not have incurred these damages. Documentation available.

[30]. The Court has jurisdiction over the Defendants under CPLR 302(a)(1) as transacting business and contracting within the state, CPLR 302(a)(2) as having committed a tort within the state and

24.   Plaintiff and many of the defendants reside in New York and/or are wholly owned, directed or controlled by entities residing in New York.

25.   Defendants transact business in, availed themselves of New York markets, are licensed in, headquartered in, control real estate, employ staff, and direct business activity into New York.[31]

26.   Defendants' abuse of process is an intentional tort directed into and committed in New York, intended to and injured Plaintiff in New York.

27.   Defendants' abuse of process was implemented by the Milbank Defendants based in New York and occurred under a litigation duly filed in New York.

28.   Jurisdiction does not lie with SDNY.  No federal question, no diversity of citizenship between the Plaintiff and all of the Defendants, SDNY expressly declined supplemental jurisdiction as to Rabobank Suit matters.

29.   Venue and jurisdiction in the Court are the only U.S. venue and jurisdiction where Plaintiff can seek recovery for Defendants' intentional tort.

---

CPLR 302(a)(3)(ii) long arm jurisdiction as to any defendant claiming to lack sufficient nexus with New York.

[31]. "Cooperative Centrale Raiffeisen-Boerenleenbank B.A., Utrecht Netherlands [previous name for Cooperatieve Rabobank, U.A., herein, "Bank"] ... conducts banking operations in the United States through various entities... U.S. Operations of the Bank include Rabobank Nederland New York Branch [herein, "Branch"] ... U.S. operations of the Bank also include Rabobank, N.A. ... on June 15, 2015 the Bank's Executive Board [CEO Wiebe Draijer is Chairman]... adopted a resolution on behalf of the Bank... Executive Board will take [action] to maintain effective control over and oversight of Branch compliance..."  Rabobank consent Agreement with NYSDFS and Fed NY, addressing Rabobank's statutory and regulatory violations, Docket Nos. 15-016-WA/RB-FB, 15-016-WA/RB-FBR, June 30, 2015, pp. 1-4.

## THE PARTIES

### The Plaintiff, Pro Se:

30.    Paul Backer has his address at 2578 Broadway, Suite 158, New York City,
NY 10025.    His telephone number is (646)830-7007 and his email is
rabobankfraudsuit@gmail.com.

### The Defendants:

31.    Mr. Wiebe Draijer is the CEO of Rabobank, personally directed misconduct
against Plaintiff.[32]    His address is Croeselaan 18, 3521 CB Utrecht, The
Netherlands and contact phone: +31.30.216.0000.

32.    Cooperatieve Rabobank U.A. directly or through proxies such as Utrecht-
America Holdings, Inc. owns 100% of legal person Rabobank Defendants and
directs the actions of physical person Rabobank Defendants.[33]    It is located at
Croeselaan 18, 3521 CB Utrecht, The Netherlands and contact phone:

---

[32].  "Mr. Wiebe Draijer, the Rabobank CEO, oversaw and ratified illegal conduct damaging the
Plaintiff.  In the Summer of 2016, the Plaintiff met with a Rabobank attorney and Mr. Gerbert
Mos, the Director of Rabobank Amsterdam Retail and Private Banking about Rabobank
misconduct that damaged Plaintiff.  Mr. Mos stated: "I report to the CEO [Wiebe Draijer] and
Board of Rabobank." and "They are aware of my actions and approve."    Contemporaneous
recording available."  Clarification added.  Rabobank Suit, Document 71, 09/11/17, p. 2 of 12.
[33].    Rabobank controls hundreds of catspaw companies lacking indicia of independence.
https://www.rabobank.com/en/images/list-of-interests-annual-report-2016.pdf

Page 14 of 44

101697/2017 SUMMONS AND COMPLAINT AND DEMAND FOR JURY TRIAL   Case 1:17-cv-09907-PGG   Document 1-1   Filed 12/19/17   Page 14 of 43

+31.30.216.0000.

33.   Milbank, Tweed, Hadley & McCloy is a law firm, serves as house counsel to

Rabobank on RICO, fraud and conspiracy matters, committed abuse of

process.  It is located at 28 Liberty Street, New York, New York 10005-1413

and contact phone: (212)530-5000.

34.   Utrecht-America Holdings, Inc. lacks indicia of independent existence from

Rabobank, claims assets of nearly $25 billion including 100% ownership of

Rabo Securities USA, Inc. and Rabobank N.A.  It is located at 245 Park

Avenue, New York, New York 10167 and contact phone: (212)916-7800.[34]

35.   Rabobank Nederland New York Branch lacks indicia of independent

existence from Rabobank.[35]  It is located at 245 Park Avenue, New York, New

York 10167 and contact phone: (212)916-7800.

36.   Rabo Securities USA, Inc. is a registered securities company and lacks indicia

of independent existence from Rabobank.[36]  It is located at 245 Park Avenue,

---

[34].  Utrecht-America Holdings, Inc. lacks its own phone number or address is housed in Rabobank facilities in New York.

[35].  "under Dutch law, a branch is not a separate legal entity...", Rabobank U.S. 30,000,000,000 Medium Term Note Offering Circular, 5/12/16, p. 1.
https://www.rabobank.com/en/images/201705-usd-30bn-mtn-annual-update-offering-circular.pdf

[36].  "Rabo Securities USA, Inc. [RSI] is a Member of the Chicago Mercantile Exchange ("CME") the sole purpose of which is for RSI to clear interest rate swap transactions on behalf of our parent affiliate, Cooperatieve Rabobank, U.A." FINRA, BrokerCheck Report, Rabo Securities USA, Inc., CRD #122657, p. 13. https://files.brokercheck.finra.org/firm/firm_122657.pdf

Printed: 12/5/2017

New York, New York 10167 and contact phone: (212)916-7800.

37.  Rabobank N.A. is a nationally licensed U.S. bank.  It is located at 915 Highland Pointe Drive Roseville, CA 95678 and contact phone: 1(800)942-6222.  Its address for service of process is RABOBANK. N.A. Institution ID Number: 24583 1554 South Broadway, Santa Maria, CA 93454.

38.  Mark Borrecco is CEO of Rabobank N.A., directed abuse of process against Plaintiff by Rabobank N.A.  His address is 915 Highland Pointe Drive Roseville, CA 95678 and contact phone: 1(800)942-6222.

39.  David R. Gelfand is a Milbank Partner and house counsel to Rabobank on RICO, fraud and conspiracy matters, supervised and committed abuse of process.  His address is 28 Liberty Street, New York, New York 10005-1413 and contact phone: (212)530-5000.

40.  Rajiv Singh is the CEO of Rabobank Nederland New York Branch, directed abuse of process by Rabobank Nederland New York Branch.  His address is 245 Park Avenue, New York, N.Y. 10167 and contact phone: (212) 916-7800.

41.  Andrew Sherman is the General Counsel and Managing Director of Rabobank Nederland New York Branch, responsible for Rabobank litigations matters.[37] He directed and committed abuse of process.  His address is 245 Park Avenue,

---

[37].   http://www.argylejournal.com/general-counsel/andrew-sherman-general-counsel-for-the-new-york-branch-of-rabobank-nederland-and-freshfields-partner-jerome-ranawake-discussed-how-legal-can-protect-an-institution-while-also-making-it-profitable-a/

New York, New York 10167 and contact phone: (212)916-7800.

42.   John Does 1 through 5 are persons who participated in and/or directed abuse of process against Plaintiff, their identity and addresses are in the exclusive knowledge and possession of Defendants and subject to discovery.

## DEFENDANTS' ABUSE OF PROCESS ATTACKED WHISTLEBLOWING

43.   Defendants damaged Plaintiff by explicitly and concertedly abusing process, perverting motion practice under the Rules, attacking Whistleblowing as grounds for financial damages and sanctions.

44.   The following list of specific attacks on Whistleblowing is likely incomplete (the Pro Se Plaintiff lacks e-Discovery facilities):

    a.   "threat-or possible actual filing of regulatory and/or ethics complaints against Rabobank, its worldwide affiliates..."[38]

    b.   "communications to regulators in Europe and the United States..."[39]

    c.   "filing-of regulatory and/or ethics complaints against Rabobank, its

---

[38]. Rabobank Suit, Memorandum of Law in Support of the Moving Rabobank Defendants' Motion to Dismiss, Document 29, 12/12/16, p. 9 of 35.
[39]. Rabobank Suit, Memorandum of Law in Support of the Moving Rabobank Defendants' Motion for Sanctions Pursuant to Rule 11, Document 33, 12/12/16, p. 5 of 31.

Page 17 of 44

101697/2017 SUMMONS AND COMPLAINT AND DEMAND FOR JURY TRIAL   Case 1:17-cv-09907-PGG   Document 1-1   Filed 12/19/17   Page 17 of 43

global affiliates and employees..."[40]

d. "...suggested that he would approach regulators in the US..."[41]

e. "...providing unspecified correspondence from Milbank to government regulators and SRO in US and abroad."[42]

f. "...wrote to regulators in New York and The Netherlands in an attempt to initiate investigation of Rabobank..."[43]

g. "...attempting to initiate regulatory proceedings against Rabobank..."[44]

h. "...attempting to initiate regulatory proceedings against Rabobank..."[45]

i. "...attempted to initiate regulatory proceedings against Rabobank and sent repeated harassing emails to Rabobank's undersigned counsel, Milbank, and its Chairman (who is not an attorney of record in this or any other matter involving Rabobank)."[46]

---

[40]. Ibid, p. 6 of 31.

[41]. Ibid, p. 17 of 31.

[42]. Ibid, p. 19 of 31.

[43]. Rabobank Suit, Memorandum of Law in Support of the Moving Rabobank Defendants' Opposition to Plaintiff's Motion for Leave to Amend, Document 39, 2/23/17, p. 9 of 32.

[44]. Ibid, p. 25 of 32.

[45]. Rabobank Suit, The Moving Rabobank Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery, Doc. 49, 5/10/17, p. 6 of 8.

[46]. Rabobank Suit, Milbank letter to Honorable Paul G. Gardephe, Doc. 69, 8/18/17, p. 3 of 3.

"Harassing emails" claimed by Defendants as basis for financial damages and sanctions were Plaintiff's attempts to persuade Defendants to follow the Rules and law and cease their abuse of process materially and irreparably damaging Plaintiff.

Correspondence to Mr. Scott A. Edelman as Chairman of Milbank informed him of ongoing abuse of process by Defendants including Milbank attorneys against Plaintiff.

45. Defendants abused process by demanding financial damages and sanctions specifically for "harassing" emails from Plaintiff to Milbank Defendants regarding Whistleblowing.

46. Complete, unedited text of "harassing" email no.1: "Dear Mr. Gelfand, As a courtesy, please be advised of public document release in connection with DNB inquiry."[47]

47. Complete, unedited text of "harassing" email no.2: "Dear Mr. Gelfand, As a courtesy, please be advised of public document release in connection with AFM enforcement."[48]

48. Defendants demanded financial damages and sanctions for two emails of eighteen words irrelevant to the Rabobank Suit each which Defendants required be forwarded to them and having no relevance to the Rabobank Suit.

49. Relentless, "cut and paste" language consistency across numerous documents shows that attacking Whistleblowing was Defendants' primary purpose, not incidental or accidental to some legitimate litigation purpose.

---

Defendants further abused process, claiming the very emails informing the Chairman of Milbank of Milbank Defendants' misconduct as grounds for financial damages and sanctions.

[47]. Rabobank Suit, Declaration of Mark D. Villaverde in Support of the Moving Rabobank Defendants' Motion for Sanctions Pursuant to Rule 11, Document 34-7, 12/12/16, p. 2 of 2.

[48]. Rabobank Suit, Declaration of Mark D. Villaverde in Support of the Moving Rabobank Defendants' Motion for Sanctions Pursuant to Rule 11, Document 34-8, 12/12/16, p. 2 of 2.

## PLAINTIFF ACTED ON A MORAL OBLIGATION TO BLOW THE
## WHISTLE ON FRAUD

50.   Plaintiff witnessed the devastation of unchecked financial fraud and devoted
      much of his professional career to fighting it.[49]

51.   Plaintiff's only relationship with Rabobank was as a Rabobank client damaged
      by Rabobank.  Plaintiff never had a duty of confidentiality to or an attorney-
      client relationship with any of the Defendants.[50]

52.   Plaintiff developed original, actionable information on Rabobank fraud and
      other misconduct that damaged Plaintiff, market integrity and individuals.

53.   Plaintiff blew the whistle on his bank's ongoing criminal and otherwise illegal
      conduct for profit as a duty to prevent injury to others, enable Agencies,
      should the information be judged by them to be substantiated and actionable,

---

[49]. In 1997, Plaintiff worked as a volunteer attorney in a society collapsed by financial fraud. Elderly reduced to begging in the streets or trying to feed themselves out of the trash. An old woman too proud to accept my "hand-out" leading her tiny granddaughter by the hand as she searched dumpsters for food. Her granddaughter was an orphan, her husband was dead and their bank "disappeared" with their life savings, "They were so nice and now they are gone." Pooling my volunteer's stipend with others to leave plastic bags with food, bread, clean water, soap and warm clothing on dumpsters was a defining experience.

The price of ignoring massive, concerted, pervasive fraud and conspiracy by major banks able to undermine Agencies is not metaphorical. It is people eating out of dumpsters. It is the loss of food security, education and hope for those least able to defend themselves.

[50]. At no point was any Defendant a client and/or employer of Plaintiff. Prior to Rabobank Suit, Plaintiff at no point had access to Defendants' non-public documents as a result of an employment, consulting or client relationship.

101697/2017 SUMMONS AND COMPLAINT AND DEMAND FOR JURY TRIAL

to act to protect market integrity and individuals.

54.    Plaintiff never sought or accepted financial reward for Whistleblowing.[51]

## ABUSED PROCESS "NAMING AND SHAMING" PLAINTIFF AS A

## WHISTLEBLOWER AND ATTORNEY

55.    Plaintiff never publicly disclosed that he was engaged in whistleblowing and

regulatory reporting ("Whistleblowing").

56.    Disclosing a whistleblower's or regulatory reporter's identity is universally

recognized as inescapably harmful to his person, livelihood, reputation and

professional standing.[52]

---

[51]. Plaintiff previously stated and reiterates his intent to donate all litigation proceeds to non-profits strengthening accountability, corporate governance and investor protection.

[52]. "The Administrative Review Board of the Department of Labor determined that the company's disclosure to Menendez's colleagues of his identity as the SEC whistleblower who had caused an official investigation, thus resulting in Menendez's workplace ostracism, constituted illegal retaliation ... we affirm." *Halliburton Company v. Administrative Review Board, United States Department of Labor*, 13-60323, United States Court of Appeals for the Fifth Circuit, Revised December 29, 2014.

"Whistleblowing is not an easy task.  It can lead to emotional and personal problems, ostracism in both professional and personal circles, and a host of other professional difficulties ... consequences of blowing the whistle can be so severe that they [attorneys] usually counsel clients against taking their information public, at least until the potential whistleblowers have grappled with all the consequences of their decision." and "quoting Patrick Burns, spokesman for nonprofit Taxpayers Against Fraud, as saying, "There is a 100 percent chance that you will be unemployed--the question is, Will you be forever unemployable?"". Franziska Hertel, Note: Qui Tam For Tax?: Lessons From The States, 113 Colum. L. Rev. 1897, November 2013.

"...disclosure of the individual's identity was likely to cause severe damage to his standing..." Tax Research Consultant (CCH) Sec. IRS: 63,060.05.

101697/2017 SUMMONS AND COMPLAINT AND DEMAND FOR JURY TRIAL

57.  Defendants' own published policies explicitly recognize the inescapable harm to whistleblower's person, livelihood, reputation and professional standing from disclosure.[53]

58.  Recognizing the inescapable permanent harm from disclosure, Agencies have statutory and policy protection for whistleblower identity.[54]

59.  Harm to professional standing and reputation is particularly inevitable and severe in professions such as law where livelihood wholly depends on reputation.[55]

60.  Defendants led by Wiebe Draijer not content with their "snitches get stitches" outing of Plaintiff as a whistleblower, relentlessly published that Plaintiff is both an attorney and a whistleblower.

61.  In one document published to the world, Defendants stated that Plaintiff is an

---

[53].  "...notification must not contain details relating to the identity of the notifier, unless the notifier has given written permission..." and "Each person who obtains information on a report pursuant to these regulations must observe secrecy with regards to it towards, third parties..." RABOBANK REGULATION FOR REPORTING OF ABUSES, Ver. May 19, 2016. https://www.rabobank.com/en/images/klokkenluiderregeling-19-05-2016-eng-final.pdf

[54].  SEC "shall not disclose any information, including information provided by a whistleblower to the Commission, which could reasonably be expected to reveal the identity of a whistleblower". 15 U.S.C. Sec. 78u-6(h)(2)(A) – Securities whistleblower incentives and protection.

[55].  "We are in full accord with the judge's observation that an attorney is not much more than his reputation and that once sullied it is very difficult . . . to undo the tarnish." The court goes on to cite 2 D.B. Dobbs Torts Sec. 440, at 1242 (2001), "("intangible damages recoverable [for abuse of process] include damages for harm to reputation")". *Millenium Equity Holdings v. Mahlowitz*, Supreme Judicial Court of Massachusetts, 925 N.E.2d 513, May 3, 2010.

Printed: 12/5/2017

101697/2017 SUMMONS AND COMPLAINT AND DEMAND FOR JURY TRIAL Case 1:17-cv-09907-PGG   Document 1-1   Filed 12/19/17   Page 22 of 43

Page 22 of 44

attorney twice on the same page as publicizing his Whistleblowing.[56]

62. Plaintiff is an attorney admitted to practice in New York for over 20 years.

63. Plaintiff never consented to being "outed" by the Defendants as a whistleblower.

64. That Plaintiff is a whistleblower had no conceivable connection to the legal issues in the Rabobank Suit or to any permissible or anticipatable purpose for Defendants' legal process, motions under the Rules.[57]

65. Disclosure harmed Plaintiff not only during publication, he will be inevitably and severely damaged for the rest of his working life.[58]

66. Defendants' abuse of process caused the loss of specific professional opportunities and permanent, ongoing and irreparable damage to Plaintiff's livelihood, standing and reputation.


## PUBLISHED CONFIDENTIAL AND DANGEROUS TRANSACTION

---

[56]. Rabobank Suit, Document 29, 12/12/16, p. 9 of 35.

[57]. In the unlikely event that Defendants had a sincere belief that Plaintiff's Whistleblowing had relevance to the Rabobank Suit, they had means to communicate this information to SDNY confidentially. They did not do so.

[58]. Rabobank whistleblower Joseph Insinga who successfully sued Rabobank and disclosed an alleged Rabobank scheme to evade over a billion dollars in taxes noted that being known as a whistleblower made him unemployable.
https://www.nytimes.com/2014/02/09/business/sounding-the-tax-alarm-to-little-applause.html

101697/2017 SUMMONS AND COMPLAINT AMENDED AND FOR JURY TRIAL Case 1:17-cv-09907-PGG    Document 1-1    Filed 12/19/17    Page 23 of 43

## INFORMATION TO TERRORIZE PLAINTIFF AND FAMILY

67.  To suppress Whistleblowing, Defendants abused process, endangered Plaintiff's family by publishing to the world highly dangerous and confidential transactional information obtained by Rabobank as Plaintiff's fiduciary.

68.  As a Rabobank Private Banking client Plaintiff could not transact on, much less close his account without the consent of his fiduciary, Rabobank.[59]

69.  On December 12, 2016, absent any litigation necessity or connection to the Rabobank Suit, Defendants published to the world the amount, New York recipient bank and date of Plaintiff's very large cash transaction[60] together with Plaintiff's address, email and phone number.[61]

70.  Defendants drew and published a roadmap for identity or other criminals to

---

[59]. In the Summer of 2016, Rabobank ignored multiple in-person requests by Plaintiff to transact on his own account. Subsequently, Mr. Gerbert Mos as Plaintiff's fiduciary altered requested transaction amounts to those Mr. Mos decided were appropriate.

Rabobank prevented Plaintiff from closing his account without its consent. In the Summer of 2016, prior to filing Rabobank Suit Plaintiff met in Amsterdam with a designated Rabobank executive and asked to close his account. Rabobank executive refused, "That is not the purpose of our meeting", unless Mr. Gerbert Mos the Rabobank Director of Retail and Private Banking personally permits Plaintiff to close his own account. After a telephone and email discussion observed by Plaintiff, Mr. Mos allowed the Plaintiff to close his account and he did so. Contemporaneous recording available. The information subsequently published to the world by Defendants to terrorize Plaintiff was required to close his account.

[60]. Plaintiff withdrew his life savings from Rabobank.

[61]. Rabobank Suit, Declaration of Andrew Sherman in Support of the Moving Rabobank Defendants' Motion for Sanctions Pursuant to Rule 11, Document 35, filed and signed 12/12/16, p. 2 of 3.

attack the Plaintiff and his family including a four year old child to punish Whistleblowing.[62]

71. Defendants made sure to publish without notice to Plaintiff, to maximize emotional distress and damage. Plaintiff did not know that Defendants published this dangerous confidential information to the world and was unable to protect his family or accounts. Subsequently, Plaintiff received fraud warnings on his accounts.

72. Defendants not only knew that it was improper to publish this information. Rabobank and their house counsel, Milbank Defendants presented legal argument to SDNY in an unrelated case of the impermissibility of disclosing bank information.[63]

73. Defendants claimed that the amount, date, receiving bank, etc. for a very large cash transaction were not confidential.[64]

---

[62]. In the unlikely event that Defendants genuinely believed that this information was relevant, they could have advised SDNY of it confidentially. They did not do so.

[63]. *Laydon v. Mizuho Bank, Ltd.*, 1:12-cv-3419, SDNY, 2016 U.S. Dist. LEXIS 100068, 2016 U.S. Dist. LEXIS 57753 and 2017 U.S. Dist. LEXIS 38270, alleging fraud and conspiracy against Rabobank and others, David R. Gelfand and Milbank as Rabobank defense counsel. Defense counsel submitted extensive legal treatise on impermissibility of providing bank transactional data in response to a federal court (SDNY) subpoena. To punish and suppress Plaintiff, Defendants led by Draijer published transactional data absent a subpoena, discovery request, court order or any relevance to the litigation.

[64]. Mark Burstein, Executive Director and Head of Compliance, Rabobank, Letter to NYSDFS, 4/11/2017, p. 3 of 3 "...(ii) Mr. Backer's claim that the Declaration disclosed protected information is factually inaccurate, as no confidential information was disclosed."

74. Rabobank claimed the right to publish to the world information enabling criminals to attack their own customers whenever they felt like it.

75. Subsequently, Defendants claimed litigation privilege, "... information was disclosed in a pending litigation to defend against Mr. Backer's frivolous and baseless claims in that lawsuit, the disclosure is legally privileged."[65]

76. Defendants published the information to the world as part of a Motion for Sanctions, a legal process not intended to "defend" against quoting Defendants, "frivolous and baseless" claims.

77. Defendants knew that there was no claim by the Plaintiff that could have conceivably been addressed by the publication to the world of his confidential and dangerous transaction information.

78. Defendants had inescapable knowledge that Mr. Gerbert Mos, a ranking Rabobank executive, a direct report to Rabobank CEO Wiebe Draijer as the Rabobank Director of Private and Retail Banking personally authorized and oversaw the closing of Plaintiff's account prior to Rabobank Suit and half a year prior to the publication of transaction information by Defendants.

---

Rabobank Executive Director and Head of Compliance explicitly linked publication of Plaintiff's dangerous and confidential information to Plaintiff's Whistleblowing, "[Plaintiff]... contacted multiple regulators in The Netherlands and the United States asking them to initiate investigations of Rabobank...", verbatim repetition of Defendants' abuse of process attacking Whistleblowing in the Rabobank Suit. "**Burstein Letter**" available on request.
[65]. Ibid.

24

79. Plaintiff's banking statements relied on by the Defendants for information for publication showed that the account was closed prior to Rabobank Suit and half a year prior to the publication.

80. Defendants had repeated notice that the account was closed, "Plaintiff makes no "withdrawal demands" of any kind to Rabobank in this lawsuit. Plaintiff's primary account with Rabobank was terminated prior to filing suit."[66]

81. Defendants abused process to damage and terrorize Plaintiff, suppressed Whistleblowing to Agencies by proving their willingness to publish client information entrusted to Rabobank, no matter how irrelevant to a legal action or dangerous to their own clients.


## WHISTLEBLOWING WAS IRRELEVANT TO THE RABOBANK SUIT LITIGATION

82. Plaintiff's Whistleblowing was not a cause of action, a defense or a disputed fact. Whistleblowing was wholly irrelevant to the Rabobank Suit.

83. Agency action as a result of Whistleblowing is completely outside of the Rabobank Suit.

84. Defendants' claim that Whistleblowing was to, quoting Defendants, "extort" a

---

[66]. Rabobank Suit, Document 27, filed 12/7/16, p. 1 of 25.

Rabobank Suit settlement is a knowing lie.

85.   Plaintiff never requested financial settlement after filing Rabobank Suit.[67]

86.   Accepting Whistleblowing and Agency oversight is what Defendants owe for their privileged, licensed access to and livelihoods derived from Agency regulated markets.   As licensed entities, legal person Defendants must maintain viable in-house compliance departments to address Agency action. Defendants' rejection of this shocks the conscience.

87.   The only increase to Defendants' costs from Plaintiff's Whistleblowing is Milbank Defendants' billing to Rabobank Defendants for Agency matters irrelevant to the Rabobank Suit.   That speaks to Milbank Defendants' avarice not Plaintiff's intent or actions.[68]

---

[67].  "One of the [Milbank Aug. 2017 to SDNY] Letter's more bizarre lies is that the Pro Se Plaintiff "extorts" a settlement.  The only request for financial settlement talks came from Mr. Gelfand and he promptly violated their confidentiality.   Mr. Gelfand knowingly violated the law and endangered the Plaintiff's family and child to drive home the intolerance for regulatory reporters and whistleblowers. The idea that Plaintiff seeks settlement talks with Mr. Gelfand after having his child endangered strains credulity.  The Plaintiff seeks to move the litigation forward and trial." Rabobank Suit, Document 71, 9/11/17, p. 4 of 12.

[68].  "It is not clear why Mr. Gelfand and Milbank believe that they should bill and be further enriched for a regulatory complaint.  The Moving Rabobank Defendants are obligated and for a decade failed to implement viable inhouse regulatory compliance.  Rabobank repeatedly got caught violating the law, each time undertaking to put in place viable compliance. And didn't.  In 2015, Cooperatieve Rabobank U.A. was caught violating BSA/AML law by FED NY and NYSDFS and the Rabobank Executive Board led by the CEO undertook to yet again, build viable inhouse compliance frameworks." Rabobank Suit, Document 71, p. 6 of 12.

"Mr. Gelfand and Milbank use the fact of their own astronomical billing to "prove" Plaintiff's ill intentions to (per Letter) "extort", "harass", "inflict" and "waste defendants'

88. The claim that a Pro Se Plaintiff's Whistleblowing "extorted" an organization reported to have dedicated $1.5 to 2 billion dollars to fines, judgments, contingency reserves and legal costs is a lie so fantastically ludicrous as to tax the most febrile imagination.

## DEFENDANTS' MOTION PRACTICE UNDER RULES WAS REGULARLY ISSUED LEGAL PROCESS

89. The leading New York case on abuse of process, *Robert Curiano et al. v. Joseph Suozzi*, Court of Appeals of the State of New York, 469 N.E.2d 1324, 10/11/84 ("*Curiano*") states:

> "Abuse of process has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective."

90. Research did not reveal controlling New York authority on whether Defendants' motion practice under the Rules is regularly issued process within

resources". … The Pro Se Plaintiff is not the one destroying Rabobank's reputation and wasting its resources." Rabobank Suit, Document 71, p. 7 of 12.

the meaning of abuse of process.[69]

91.   While not addressing motion practice under Rules seeking financial damages and sanctions, the language of *Williams v. Williams*, 246 N.E.2d 333, 335, Court of Appeals of the State of New York, 1/23/69 is highly illustrative, "Process is a direction or demand that the person to whom it is directed shall perform or refrain from the doing of some described act."[70]

92.   Lacking controlling New York authority, Plaintiff respectfully refers to the persuasive authority of other states courts', uniformly broadly construing meaning of process.   Supreme Court of Connecticut provided a cogent summary in *Larobina v. McDonald*, 876 A.2d 522, 528, 2005:

> "Our review of the case law from other jurisdictions reveals that most courts that have considered the issue have construed the term process broadly. See, e.g., *Hopper* v. *Drysdale*, 524 F. Sup. 1039, 1042 (D. Mont. 1981) (under Montana law, notice of deposition is process for purpose of tort of abuse of process); Nienstedt v. Wetzel, 133 Ariz. 348, 352, 651 P.2d 876 (1982) (process has been interpreted broadly

---

[69]. As discussed below, court action setting a deadline to respond to a motion for financial damages and sanctions can be analogized to a court order providing for an arrest of property unless a party complies with a timeline for certain actions.

[70]. Defendants' Motion practice under the Rules extorted Plaintiff to abandon his litigation and suppress Whistleblowing, imposed emotional distress, drained his resources, irreparably and ongoingly damaged his livelihood.

to encompass entire range of procedures incident to litigation

process); Twyford v. Twyford, 63 Cal. App. 3d 916, 923, 134 Cal.

Rptr. 145 (1976) (same); Kensington Land Co. v. Zelnick, 94 Ohio

Misc. 2d 180, 184, 704 N.E.2d 1285 (1997) (process includes all acts

of court from beginning to end of action); *Foothill Industrial*

*Bank* v. *Mikkelson*, 623 P.2d 748, 757 (Wyo. 1981) (process has been

interpreted broadly to encompass entire range of procedures incident

to litigation process); cf. *Gordon* v. *Community First State Bank*, 255

Neb. 637, 648, 587 N.W.2d 343 (1998) (process means "any means

used by the court to acquire or to exercise its jurisdiction over a

person or over specific property" [internal quotation marks omitted]),

cert. denied, 528 U.S. 814, 120 S.Ct. 50, 145 L.Ed.2d 44 (1999). The

court in *Twyford* v. *Twyford*, supra, 923, explained that "[t]his broad

reach of the 'abuse of process' tort can be explained historically, since

the tort evolved as a 'catch-all' category to cover improper uses of the

judicial machinery that did not fit within the earlier established, but

narrowly circumscribed, action of malicious prosecution."

93.   Defendants' motions and voluminous supporting documentation under the

Rules was legal process regularly issued under SDNY orders.[71]

94.   Plaintiff stands ready to provide the Court with additional legal argument that Defendants' motion practice under the Rules was legal process.


## DEFENDANTS' MOTION PRACTICE UNDER RULES WAS LEGAL PROCESS CAPABLE OF BEING ABUSED


95.   *Curiano* and other New York case law show that only some types of legal process can be abused so as to constitute abuse of process.

96.   Perhaps the most settled examples are that a subpoena or an arrest of property are actionable as abuse of process, but the filing of a lawsuit is not.[72]

97.   The Plaintiff respectfully submits that the role of the court and the impact on the target's person and property are the distinguishing factors as to whether perversion of a particular legal process is actionable as abuse of process.[73]

---

[71]. Rabobank Suit, Document 16, October 10, 2016; Document 24, November 17, 2016.

[72]. In a discussion of prima facie tort, but also readily applicable and applied by New York courts to abuse of process, The Court of Appeals stated in *Curiano*, "... New York courts have consistently refused to allow retaliatory lawsuits based on prima facie tort predicated on the malicious institution of a prior civil action." Citations to other cases in *Curiano* omitted.

[73]. Returning to the examples of a malicious civil complaint or lying in discovery as legal process that is not actionable as abuse of process in New York. They are characterized by 1. Litigant's actions largely independent of court authority (a party chooses when to file a complaint and what it says in a deposition), 2. Lack of imminent application of court power impacting target's person and property. Lies in a deposition or a civil complaint no matter how maliciously inspired are

98.  A subpoena compels action, presents an imminent court ordered interference with its target's person and property and is actionable as abuse of process. An arrest of property is imminent court ordered impact on the target's person and property and is actionable.

99.  Both legal processes are characterized by and rely on the prospect of the imminent exertion of court power and authority over the target's person and property.

100. Defendants relied on court power to effect imminent impact of their motions under the Rules on the Plaintiff's person and property:

   a.  "On December 12, 2016, Rabobank and certain of its affiliates filed a motion to dismiss Mr. Backer's lawsuit (the "Motion to Dismiss") and, because the lawsuit is frivolous, simultaneously filed a motion for sanctions against Mr. Backer (the "Sanctions Motion") ... Mr. Backer has not opposed the motions, which remain pending, and his court-ordered deadline for doing so has passed."[74] and

   b.  "Because Plaintiff did not oppose the Motion to Dismiss or Motion for Sanctions, and Court-ordered deadline for doing so has passed, both

---

many procedural steps away from an exercise of court power (compulsion) impacting target's person and property.

[74]. Burstein Letter, p. 2 of 3.

Printed: 12/5/2017

motions should be deemed unopposed... Defendants request that the Court impose sanctions on Plaintiff under Rule 11"[75]

101. Defendants interfered with Plaintiff's person and property through their abuse of motion practice under the Rules in the same manner as a subpoena, an arrest of property, lien or other exercise of the court's power could be actionably abused by an unethical litigant.[76]

102. Defendants' abuse of process, motions under the Rules seeking financial damages and sanctions was legal process whose perversion is actionable as abuse of process in New York.

103. Plaintiff stands ready to provide the Court with further legal argument that Defendants' abuse of motion practice under Rules is actionable as abuse of process in New York.

## DEFENDANTS PERVERTED LEGAL PROCESS

104. "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to

---

[75]. Rabobank Suit, Document 37, January 20, 2017, p. 2 of 5.

[76]. Defendants' abuse of process literally forced the Plaintiff to unnecessarily expend hundreds of professional hours and tens of thousands of dollars to respond and keep responding or face imminent award of astronomical (to Plaintiff) financial damages and other sanctions.

liability to the other for harm caused by the abused of process."[77]

105. Defendants' primary purpose (and impact) was to extort Plaintiff to abandon his claim[78], drain Plaintiff's resources, punish and suppress Whistleblowing by Plaintiff and others.[79]

106. Whistleblowing to Agencies definitionally lacks any procedural or substantive connection to Rabobank Suit, any mention, much less concerted, relentless attack on Whistleblowing actionably perverted legal process.

107. Defendants abuse of process sought and achieved collateral objectives that not only were not anticipated by the Rules, but directly violated the Rules letter and purpose.

108. Justice O'Connor for the U.S. Supreme Court, "the central purpose of Rule 11 is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts".[80]

---

[77]. Restatement (Second) of Torts, Sec. 682, The American Law Institute, 1977.

[78]. Defendants repeatedly communicated to Plaintiff their demand that he dismiss his litigation with prejudice as their price for dropping their abuse of process against him.

[79]. Persuasive authority, "Extortion", defined as obtaining from by coercive means, by threats or intimidation [cite omitted] … could encompass some of the purposes alluded to … such as forcing GRC to abandon its claim because of the attorney appellees' apparent willingness to "harass" and cause financial injury to GRC. But we do not reach this issue…" General Refractories v. Fireman's Fund, U.S. Court of Appeals, Third Circuit, 337 F.3d 297, July 24, 2003 (hereinafter "*General Refractories*"), footnote 4.

[80]. *Cooter Gell v. Hartmarx Corp. et al*, 110 S.Ct 2447.

109. Defendants' actionably abused process, used motion practice under the Rules as a weapon to violate the Rules' purpose and letter:  harass, drain resources, extort, delay litigation and weaken Plaintiff's resolution.

110. The persuasive authority is extensive:

    a. "Pursuing litigation primarily to harass and cause injury to the adverse party is an objective not authorized by the equity action … and constitutes a sufficient perversion of the process employed here to support a common law claim of abuse of process … Whether abuse of process is related to litigation and/or improves a party's chances of succeeding is not dispositive."[81];

    b. "not countenance the use of the legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *McGee v. Feege*, Supreme Court of Pennsylvania, 535 A.2d 1020, 1026.

    c. "The cause of action [abuse of process] should be available in circumstances [other than extortion – like threats] as well, so long as

_____

[81]. "… would render the tort largely impotent, inapplicable to those cases where a legal process is pursued in a perverted manner in order to directly harm an adversary.  We would be condoning tortious tactics that harm and otherwise disadvantage an adversary simply because those tactics are related to the litigation and improve a party's chances of succeeding in the litigation.  We refuse to do so and doubt that the Supreme Court of Pennsylvania would".  General Refractories citing *Accord Poduska v. Ward*, 895 F.2d 854, 856 [applying Massachusetts law].

intentional abuse of the legal system can be proved.[82]

d. A "perversion" of legal process occurs when a party uses the process "primarily to accomplish a purpose for which the process was not designed."[83]

e. "... a court must look at the legal process used and decide whether it was used primarily "to benefit someone in achieving a purpose which is not the authorized goal of the procedure in question ... not whether it was used to achieve a purpose or advantage unrelated or collateral to the entire underlying litigation proceeding."[84]

f. A "collateral advantage" or some type of extortion outside of the underlying litigation is not the only type of abuse of process case; rather, it is the usual case – in other words, "the classic example."[85]

111. Draijer led Rabobank into bringing its limitless resources including their house counsel, Milbank Defendants to turn legal process, motion practice under the Rules into a weapon to ruin Plaintiff for Whistleblowing and to teach a lesson to anyone considering blowing the whistle on Rabobank

---

[82]. General Refractories citing Harper, James, Gray, The Law of Torts Sec. 4.9.
[83]. General Refractories, citing *Hart v. O'Malley*, 647 A.2d 542, 551 and other cases.
[84]. General Refractories, citing *Werner v. Plater-Zyberk*, 799 A.2d 776, 785.
[85]. General Refractories, citing *Al Hamilton Contracting co. v. Cowder*, 644 A.2d 188, 192 and other cases.

illegality.[86]

112. Plaintiff stands ready to provide the Court with further legal argument that Defendants actionably abused process.


## DEFENDANTS' ABUSE OF PROCESS WAS STRATEGIC

113. Was Defendants' abuse of process somehow inadvertent?

114. The Defendants are some of the most sophisticated, experienced and lavishly funded litigants in the world, reportedly devoted $1.5 to 2 billion to paying penalties, legal fees and establishing reserves for their fraud, criminal and otherwise illegal conduct for profit.

115. Milbank, Tweed, Hadley & McCloy is one of the world's leading law firms with 600+ attorneys and annual revenues exceeding $855 million in 2016.[87]

116. Defendants' strategies for fighting allegations of Rabobank fraud, criminal and otherwise illegal conduct for profit were honed over dozens of lawsuits

---

[86]. Defendants perverted motion practice for financial damages and sanctions claims to function as SLAPP litigation against the Pro Se Plaintiff. Anything and everything was sanctionable "harassment" to them. Letter to Chairman of Milbank notifying of Milbank abuse of process? Sanctions claim. Eighteen word email sent per Milbank demand? Sanctions claim. Email that Milbank Defendants failed to sign originals and violate Rules? Sanctions claim. Ad nauseum.

A "highlight" was Defendants' sanctions demand for correspondence "harassing" Rabobank without producing a single email. There were no emails to produce, Plaintiff did not write to Rabobank after filing the Rabobank Suit. Defendants apparently pursued sanctions for a kind of vestigial (missing limb) "harassment".

[87]. https://www.law.com/americanlawyer/almID/1202779472728/?slreturn=20171030141619

36

against myriad victims of Rabobank misconduct.

117. That the abuse of process was strategic is evidenced by the relentless explicit attacks on Whistleblowing employing identical language across multiple litigation and non-litigation documents.

118. Defendants violated their own policies and statements, public and Agency policy, case precedent, academic authority, legislative statements, etc. for the simplest and most cynical reason, because it was their strategy to do so.

119. Defendants' explicitly attacked regulatory capacity, access to truthful actionable Whistleblowing of agencies including NYSDFS, SEC, New York State Attorney General, FINRA, FDIC, FED NY and others which license and oversee Rabobank Defendants.

120. Defendants did so because their downside from abuse of process is limited and a long time away:

   a. Abuse of process claims are rare and notoriously difficult to win;

   b. The likelihood of a Pro Se Plaintiff who has never litigated winning against trillion dollar Rabobank backed by Milbank Defendants are exceedingly slim;

   c. In New York, the Plaintiff as a Pro Se attorney has very limited chances of recovering for over 350 hours of professional time to date needlessly drained by Defendants' abuse of process and hundreds more that will

be needed to pursue this claim; even if Plaintiff sues, wins, maintains the action through inevitable appeals, absent punitive damages Plaintiff's recovery is likely to be a fraction of the cost of the litigation.

121. Defendants perverted legal process, because of their rage at whistleblowers and their terror of truthful, actionable Whistleblowing as more and more of Rabobank's manipulation and fraud becomes public.

## LIABILITY OF MILBANK DEFENDANTS FOR ABUSE OF PROCESS

122. Defendants' strategy of abuse of process was implemented by their house counsel Milbank Defendants. There is no daylight between Rabobank and Milbank Defendants.

123. A search of Courtlink showed dozens of litigations accusing Rabobank of fraud, conspiracy and other illegal conduct with the inevitable Milbank as Rabobank house counsel.

124. Over years, Milbank Defendants were enriched by millions of dollars as Rabobank house counsel.

125. The liability of counsel in New York for abuse of process as a "disreputable method of practice, degrading to an honorable profession and well calculated to bring the administration of justice into reproach and contempt" is well

established.[88]

126. The seminal case decided over a century ago speaks directly to Milbank Defendants' misconduct together with and on behalf of Rabobank Defendants: "Here it was sought by trickery and cunning to pervert the processes of the law from their proper use and design, in order to reach a result which it was thought could not be arrived at by the ordinary and legitimate procedure of the courts."[89]

127. The fact that Milbank Defendants' abuse of process attacking Whistleblowing was not accompanied by a single cite to a case, statute, public policy or any academic authority favoring their vicious, relentless attack on Whistleblowing shows the Milbank Defendants' mens rea, their certain knowledge of the wrongfulness of their abuse of process.

128. The conduct of Milbank Defendants was particularly cynical and damaging to the public as their abuse of process undermine the Agencies which protect market integrity and the public.

129. Milbank Defendants cynically attacked Agencies which were/are parties in numerous legal matters handled by Milbank.

---

[88]. *Frank W. Dishaw v. L. Ogden Wadleigh*, 44 N.Y.S. 207, 3/01/1897
[89]. Ibid.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

## (ABUSE OF PROCESS)

130. Plaintiff incorporates the preceding paragraphs as alleged above.

131. Defendants committed the tort of abuse of process against the Plaintiff, intentionally, permanently, ongoingly and irreparably damaging Plaintiff.

132. Plaintiff seeks punitive damages.

133. Defendants acted with high moral culpability and malice, with full awareness of the damages imposed on Plaintiff and acted to maximize damage to Plaintiff.

134. Defendants knowing that their abuse of process was legally meritless attacked Whistleblowing and Plaintiff's access to the court, both protected activities, violated their obligations as licensed persons to Agencies and the public.

135. Defendants' conduct targeted the public, suppressed Whistleblowing to undermine Agencies' ability to protect the public and market integrity.

## SECOND CLAIM FOR RELIEF

## (PRIMA FACIE TORT)

136. Plaintiff incorporates the preceding paragraphs as alleged above.

137. In the alternative, if the Court determines that Defendants' actions set forth

above are not actionable as abuse of process, Plaintiff seeks to proceed in prima facie tort.

138. Defendants committed an intentional tort against the Plaintiff, intentionally, permanently, ongoingly and irreparably damaging Plaintiff.

139. Plaintiff seeks punitive damages.

140. Defendants acted with high moral culpability and malice, with full awareness of the damages imposed on Plaintiff and acted to maximize damage to Plaintiff.

141. Defendants knowing that their actions were legally meritless attacked Whistleblowing and Plaintiff's access to the court, both protected activities, violated their obligations as licensed persons to Agencies and the public.

142. Defendants' conduct targeted the public, suppressed Whistleblowing to undermine Agencies' ability to protect the public and market integrity.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment jointly and severally against each of the defendants as to each Claim for Relief as follows:

143. Compensatory damages in an amount to be proven at trial;

144. Punitive damages in an amount to be determined by the jury;

41

145. Reasonable costs and expenses incurred as a result of Defendants' abuse of process, including Pro Se Plaintiff's professional time as attorney's fees and statutory pre-judgment and post-judgment interest;

146. Reasonable costs and expenses incurred in bringing this lawsuit, including Pro Se Plaintiff's professional time as attorney's fees and statutory pre-judgment and post-judgment in; and

147. Such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

148. Plaintiff respectfully request a jury on all issues presented in this matter.

Dated:  New York, New York

*Nov 30, 2017*

By: _____

Paul Backer, Plaintiff Pro Se

2578 Broadway, Suite 158

New York, NY 10025

(646) 830-7007

rabobankfraudsuit@gmail.com

State of New York
County of New York

Sworn to before me this
30 day of November 2017

Kenneth Cardez
Notary Public, State of New York
Reg No. 04CA6351839
Qualified in New York County
Commission Expires December 12, 2020

42

Printed: 12/5/2017