UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/19/18

PAUL BACKER

              Plaintiff,

       - against -

COOPERATIEVE RABOBANK U.A.;
WEIBE DRAIJER; MILBANK, TWEED,
HADLEY & MCCLOY, UTRECHT-
AMERICA HOLDINGS, INC., RABOBANK
NEDERLAND NEW YORK BRANCH,
RABO SECURITIES USA, INC.,
RABOBANK N.A., MARK BORRECCO,
DAVID R. GELFAND, RAJIV SINGH,
ANDREW SHERMAN, and JOHN DOES 1-5,

              Defendants.

**ORDER**

17 Civ. 9907 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       In a prior case before this Court – Backer v. USD 30 Billion MTN Programme et

al., 16 Civ. 6577 (PGG) – pro se Plaintiff Paul Backer brought fraud and other claims against

Defendant Rabobank and sixty-four other Defendants, including other financial institutions

allegedly involved in the issuance of Rabobank notes (the "Previous Action"). On September

30, 2017, this Court granted Defendants' motion to dismiss. (Dkt. No. 74, 16 Civ. 6577) In a

new case filed in Supreme Court of the State of New York, New York County, that was removed

to this Court (the "Current Action"), Plaintiff has sued some of the same entities and their

attorneys for alleged misconduct in connection with the Previous Action.

On August 8, 2018, this Court ordered Defendants to show cause why this case should not be remanded to state court for lack of subject matter jurisdiction. (Dkt. No. 52)[1] Defendants filed a response on August 15, 2018. (Dkt. No. 54)

In a September 5, 2018 letter, Plaintiff requests that this Court stay the Current Action pending resolution of his petition to the Second Circuit for a writ of mandamus. (Pltf. Ltr. (Dkt. No. 57))

Because Plaintiff has not shown a likelihood of success on the merits of his mandamus petition, his motion for a stay will be denied. As to remand, because no necessary and substantial issues of federal law are raised in the Current Action, this Court lacks subject matter jurisdiction. Accordingly, the case will be remanded to state court.

## BACKGROUND

Because both the Current Action and the Previous Action are relevant to whether this Court has subject matter jurisdiction over the Current Action, the Court describes both actions below.

In the Amended Complaint filed in the Previous Action, Plaintiff alleged that he is a U.S. citizen who transferred funds from a Dutch bank account to an account at Rabobank, relying on Rabobank's false representations that it was in compliance with U.S. law and regulatory requirements. (Am. Cmplt. (Dkt. No. 18) ¶¶ 14, 15, 18, 42, 43, 59, 60, 16 Civ. 6577) Plaintiff claims that Rabobank "redlined" him by preventing him from purchasing a residence with a Rabobank loan (id. ¶ 41); that Rabobank refused to honor Plaintiff's transaction requests and retaliated against him for reporting certain information to regulatory authorities (id. ¶ 96); that Rabobank executives engaged in illegal conduct throughout the world (id. ¶¶ 142-43, 146-

---

[1] Unless otherwise indicated, docket entries refer to entries in the Current Action.

53, 156); and that Rabobank issued two notes to avoid certain tax and compliance obligations. (Id. ¶¶ 215-61)

On December 12, 2016, Defendants moved to dismiss (Dkt. Nos. 28-31, 16 Civ. 6657) and for sanctions under Rule 11. (Dkt. Nos. 32-35, 16 Civ. 6657) Plaintiff then moved for leave to file a Second Amended Complaint (Dkt. Nos. 36, 36-1, 36-2, 16 Civ. 6657), which Defendants opposed. (Dkt. Nos. 39-40, 16 Civ. 6657)

On September 30, 2017, this Court granted Defendants' motion to dismiss and denied their motion for sanctions. (Dkt. No. 74, 16 Civ. 6577) In brief, this Court found that Plaintiff had not alleged an injury traceable to any alleged violation of the Securities Act. (Id. at 6-9)[2] Plaintiff had also not pleaded a substantial federal issue sufficient to provide a basis for this Court to exercise subject matter jurisdiction. (Id. at 9-12) While the Amended Complaint invoked criminal wire fraud, bank fraud, and money laundering statutes, those statutes do not provide a private right of action. (Id. at 11) Moreover, even if the Amended Complaint were construed to plead a civil fraud claim, such a claim was not pled with the required particularity. (Id.) Plaintiff's antitrust, RICO, discrimination, redlining, and civil rights claims were likewise not adequately pled. (Id. at 11-12) Finally, because all of Plaintiff's federal claims were dismissed, the exercise of supplemental jurisdiction was not warranted. (Id. at 12-13) In addition to granting Defendants' motion to dismiss, this Court denied Plaintiff leave to amend (id. at 13-17), and denied Defendants' motion for sanctions. (Id. at 17-18)

As to Defendants' sanctions motion, this Court stated:

> This Court has granted Defendants' motion to dismiss the Amended Complaint and denied Plaintiff's motion for leave to amend. In doing so, the Court has concluded that Plaintiff's claims are frivolous. Although pro se Plaintiff is

---

[2] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing system.

3

apparently a lawyer, the allegations in his complaints are so incoherent as to raise
concerns about his mental state. Accordingly, the Court concludes that imposing
Rule 11 sanctions would serve no purpose.

(Id.)

On October 13, 2017, Plaintiff filed a motion for recusal and to vacate the
September 30, 2017 Order. (Dkt. No. 77, 15 Civ. 6577) Plaintiff contended that the Court (1)
mishandled the litigation in a number of ways (Pltf. Br. (Dkt. No. 76) at 2-6, 16 Civ. 6577); (2)
has a prior relationship with Defendant Rabobank's counsel David R. Gelfand – an attorney at
Milbank, Tweed, Hadley & McCloy LLP – because both served on the Appellate Division, First
Department's Disciplinary Committee ten years ago (id. at 6-7 & Ex. D); (3) presided over
another case involving similar facts (id. at 7-9); (4) defamed him (id. at 10-13); (5) acted as a
defense advocate (id. at 13-17); and (6) had exhibited bias against him. (Id. at 17-20) In
addition to moving for recusal, Plaintiff argued that the September 30, 2017 Order "did not result
from due or judicial process" and thus must be vacated under Federal Rule of Civil Procedure
60. (Id. at 20)

On November 30, 2017, Plaintiff filed a complaint in New York Supreme Court,
New York County. (Cmplt. (Dkt. No. 1-1) at 43) Defendant Cooperatieve Rabobank filed a
Notice of Removal to this District on December 19, 2017. (Notice of Removal (Dkt. No. 1)) In
this action – the Current Action – Plaintiff alleges that Defendants abused the legal process in the
Previous Action. According to Plaintiff, Defendants took steps in the Previous Action that were
intended to punish him for whistleblowing. For example, Plaintiff alleges that Defendants
improperly disclosed information regarding certain transactions that he engaged in at Rabobank
(Cmplt. (Dkt. No. 1-1) ¶¶ 20a, 67-81); "named and shamed" him as a whistleblower (id. ¶¶ 20c,

4

55-66); and improperly demanded financial damages and Rule 11 sanctions. (Id. ¶¶ 45, 95-103)[3]
On January 2, 2018, this Court accepted the Current Action as related to the Previous Action.

In the Current Action, Plaintiff alleges that he was a client of Rabobank, that he "developed original, actionable information on Rabobank fraud and other misconduct," and that he "blew the whistle on [the] bank's ongoing criminal and otherwise illegal conduct for profit." (Id. ¶¶ 51-53) Plaintiff alleges that in the Previous Action, "Defendants demanded financial damages and sanctions" in retaliation for Plaintiff's alleged whistleblowing to European and U.S. financial regulators. (Id. ¶¶ 7, 9) In support of this claim, Plaintiff points to filings in the Previous Action in which Defendants cite communications from Plaintiff in which he threatened or actually filed regulatory or ethics complaints against Rabobank and its affiliates with regulators in Europe and the United States. (Id. ¶¶ 7, 44) Plaintiff further alleges that Defendants used Plaintiff's initiation of regulatory proceedings against Rabobank as grounds to (1) oppose Plaintiff's motion for leave to file a Second Amended Complaint; (2) seek dismissal of the Amended Complaint; and (3) seek Rule 11 sanctions against Plaintiff. (Id. ¶ 8) Plaintiff also alleges that Defendants "abused process by demanding financial damages and sanctions specifically for 'harassing' emails from Plaintiff to Milbank Defendants regarding Whistleblowing." (Id. ¶ 45)

---

[3] Plaintiff has filed an Amended Complaint in the Current Action (Dkt. No. 41), which Defendants argue should be struck. (Dkt. No. 49) Because whether this Court has subject matter jurisdiction is determined at the time of removal, this Court relies on the allegations of the Complaint. McCulloch Orthopedic Surgical Servs., PLLC v. United Healthcare Ins. Co. of New York, 14 Civ. 6989 (JPO), 2015 WL 3604249, at *3 (S.D.N.Y. June 8, 2015) ("It is settled law that a motion to remand is evaluated on the basis of the allegations as pleaded at the time of removal. Post-removal amendments to the pleadings should not be considered." (citing Vera v. Saks & Co., 335 F.3d 109, 116 n.2 (2d Cir. 2003) (per curiam); Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939))).

5

Plaintiff further complains that Defendants publicized his whistleblowing during the Previous Action, that this "outing" had "no conceivable connection to the legal issues" in the Previous Action, and that disclosure of his whistleblowing status caused him to lose certain professional opportunities and caused him "permanent, ongoing and irreparable" damage. (Id. ¶¶ 64, 66; see id. ¶¶ 55-66)

Plaintiff also complains that Defendants abused process by disclosing his transactional history at Rabobank. According to Plaintiff, in a December 12, 2016 filing, Defendants disclosed that Plaintiff withdrew a large amount of cash from Rabobank and published his address, email, and phone number. (Id. ¶ 69; see also Sherman Decl. (Dkt. No. 35) ¶ 5, 16 Civ. 6577 (disclosing that on July 26, 2016, Plaintiff transferred $400,000 to a Chase Bank account in New York and $562,463.57 to an account in the Czech Republic)) Plaintiff argues that this transactional information was confidential, that Defendants knew that disclosure of this information was improper (id. ¶¶ 71-72), and that Defendants disclosed this information in their legal filings in order to suppress Plaintiff's whistleblowing and to "damage and terrorize" him. (Id. ¶ 81)

Finally, Plaintiff complains that Defendants "abuse[d] . . . motion practice" under the Federal Rules of Civil Procedure in connection with their motion to dismiss and for Rule 11 sanctions. (Id. ¶¶ 95-103) Plaintiff claims that Defendants' primary purpose was to punish Plaintiff for his whistleblowing "and to teach a lesson to anyone considering blowing the whistle on Rabobank illegality." (Id. ¶ 111; see also id. ¶ 121 ("Defendants perverted legal process[] because of their rage at whistleblowers and their terror of truthful, actionable Whistleblowing as more of Rabobank's manipulation and fraud becomes public."))

6

The Complaint in the Current Action pleads state law claims for abuse of process and prima facie tort against all Defendants. (Id. ¶¶ 130-42)

On April 16, 2018, Plaintiff filed a motion for recusal in the Current Action – which raised many of the same arguments as the motion for recusal in the Previous Action – and for limited discovery in connection with his motion. (Dkt. No. 31)

On July 31, 2018, Plaintiff filed a petition for a writ of mandamus in the Second Circuit. (Mandamus Petition (Dkt. No. 1), In re Backer, Case No. 18-2273 (2d Cir. July 31, 2018)) The petition requested that the Second Circuit direct this Court to act on his motions for recusal in both the Previous Action and the Current Action and on his motion for a temporary restraining order in the Current Action. (Id. at 2-3)

On August 8, 2018, this Court denied Plaintiff's motions for recusal, discovery, and reconsideration of the Order granting Defendants' motion to dismiss the Previous Action. (Dkt. No. 53) Also on August 8, 2018, this Court ordered Defendants to show cause why this case should not be remanded to Supreme Court of the State of New York, New York County, for lack of subject matter jurisdiction. (Dkt. No. 52) Defendants filed a response on August 15, 2018. (Dkt. No. 54)

Plaintiff filed an amended mandamus petition on September 5, 2018. (Am. Mandamus Petition (Dkt. No. 21), In re Backer, Case No. 18-2273 (2d Cir. Sept. 5, 2018); see Pltf. Ltr. (Dkt. No. 57) at 2) The Amended Petition requests that the Second Circuit direct this Court to recuse itself in both the Current Action and the Previous Action. (Id. at 2) In a September 5, 2018 letter, Plaintiff requests that this Court stay its determination of subject matter jurisdiction pending resolution of Plaintiff's amended mandamus petition. (Pltf. Ltr. (Dkt. No. 57))

**DISCUSSION**

## I.  LEGAL STANDARDS

### A.  Plaintiff's Motion for a Stay

#### 1.  Standard for Stay Pending Mandamus Petition

"The determination whether to enter a stay pending an interlocutory appeal is within the discretion of the District Court." Sutherland v. Ernst & Young LLP, 856 F. Supp. 2d 638, 640 (S.D.N.Y. 2012) (citing Nken v. Holder, 556 U.S. 418, 432-33 (2009)). Courts consider four factors in determining whether a stay is appropriate pending appeal: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" Nken, 556 U.S. at 426 (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)).

A motion for a stay pending a mandamus petition is analyzed under the same four-factor test. See McNamee v. Clemens, 9 Civ. 1647 (SJ), 2014 WL 1682025, at *1 (E.D.N.Y. Apr. 28, 2014) (quoting Nken, 556 U.S. at 434) (applying four-factor test where defendant filed a mandamus petition and moved for a stay); see also Microsoft Corp. v. Weidmann Elec. Tech. Inc., 15 Civ. 153, 2017 WL 3037587, at *1 (D. Vt. Jan. 3, 2017) (same); Powertech Tech. Inc. v. Tessera, Inc., No. C 11-6121 CW, 2013 WL 1164966, at *1 (N.D. Cal. Mar. 20, 2013) ("The factors considered 'in determining whether a stay pending petition for writ of mandamus is warranted are the same as a stay pending appeal . . . .'" (quoting Durand v. Stephenson, 2012 U.S. Dist. LEXIS 154968, at *2-3 (E.D. Cal. Oct. 29, 2012))).

#### 2.  Standard for Issuance of Mandamus Petition

Three conditions must be satisfied before a writ of mandamus petition will issue:

8

First, "the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires," [Kerr v. U. S. Dist. Court for N. Dist. of Cal., 426 U.S. 394, 403 (1976)] – a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process[.] [Ex parte Fahey, 332 U.S. 258, 260 (1947)).] Second, the petitioner must satisfy "'the burden of showing that [his] right to issuance of the writ is "clear and indisputable."'" [Kerr, 426 U.S. at 403] (quoting [Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 384 (1953).] Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances. [Kerr, 426 U.S. at 403] (citing Schlagenhauf v. Holder, [379 U.S. 104, 112 n. 8 (1964)]).

Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 380-81 (2004).

"'[I]t is well-settled that the exceptional remedy of mandamus will only be invoked where the petitioner has demonstrated that its right to such relief is "clear and indisputable."'" In re Basciano, 542 F.3d 950, 955-56 (2d Cir. 2008) (quoting In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1312 (2d Cir. 1988)). Where, as here, Plaintiff challenges this Court's decision to not recuse itself, this decision will only be overturned where "it constitutes an abuse of discretion." Id. at 956. As such, "[i]n order for [an appellate court] to issue the writ, the petitioner . . . 'must "clearly and indisputably" demonstrate that the district court abused its discretion. Absent such a showing, mandamus will not lie.'" Id. (quoting In re Drexel Burnham Lambert, 861 F.2d at 1312-13).

### 3.    Standard for Recusal

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The Second Circuit has stated that recusal under Section 455 requires a showing that would cause "'an objective, disinterested observer fully informed of the underlying facts [to] entertain significant doubt that justice would be done absent recusal.'" In re Aguinda, 241 F.3d 194, 201 (2d Cir. 2001) (quoting United States v. Lovaglia, 954 F.2d 811, 815 (2d Cir. 1992)). The Supreme Court has made clear,

however, that "judicial rulings alone almost never constitute a valid basis for a bias or partiality

motion." Liteky v. United States, 510 U.S. 540, 555 (1994). Moreover,

> opinions formed by the judge on the basis of facts introduced or events occurring
> in the course of the current proceedings, or of prior proceedings, do not constitute
> a basis for a bias or partiality motion unless they display a deep-seated favoritism
> or antagonism that would make fair judgment impossible. Thus, judicial remarks
> during the course of a trial that are critical or disapproving of, or even hostile to,
> counsel, the parties, or their cases, ordinarily do not support a bias or partiality
> challenge. They may do so if they reveal an opinion that derives from an
> extrajudicial source; and they will do so if they reveal such a high degree of
> favoritism or antagonism as to make fair judgment impossible.

Id. (emphasis in original).

## B.   **Subject Matter Jurisdiction**

### 1.   **Federal Question Jurisdiction**

Defendants removed this action pursuant to 28 U.S.C. § 1331. (Notice of

Removal (Dkt. No. 1) ¶ 23) That statute provides that "[t]he district courts shall have original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United

States." 28 U.S.C. § 1331. A case "'aris[es] under' federal law in two ways": (1) "when federal

law creates the cause of action asserted"; or (2) "where a claim finds its origins in state rather

than federal law," Gunn v. Minton, 568 U.S. 251, 257 (2013) (citations omitted), but "the

plaintiff's right to relief necessarily depends on resolution of a substantial question of federal

law." Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 690 (2006). The latter set of

circumstances arises only in a "'special and small category' of cases." Gunn, 568 U.S. at 258

(quoting Empire Healthchoice, 547 U.S. at 699). Jurisdiction exists under this category where "a

federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of

resolution in federal court without disrupting the federal-state balance approved by Congress."

Id.

10

"To determine if a case involves a federal question, courts generally turn to the 'well-pleaded complaint' rule – that is, courts examine 'what necessarily appears in the plaintiff's statement of his own claim . . . unaided by anything alleged in anticipation of avoidance of defenses . . . [that] the defendant may interpose." Arditi v. Lighthouse Int'l, 676 F.3d 294, 298 (2d Cir. 2012) (quoting Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004)). However, the "corollary to the well-pleaded complaint rule" is the "artful pleading" rule, which prevents a plaintiff from "avoid[ing] removal by declining to plead 'necessary federal questions.'" Romano v. Kazacos, 609 F.3d 512, 519 (2d Cir. 2010) (quoting Rivet v. Regions Bank, 522 U.S. 470, 475 (1998)). "The artful pleading rule applies when Congress has either (1) so completely preempted, or entirely substituted, a federal law cause of action for a state one that plaintiff cannot avoid removal by declining to plead 'necessary federal questions,' or (2) expressly provided for the removal of particular actions asserting state law claims in state court." Id. (internal citations omitted).

## 2. Removal

"The party seeking to preserve removal has the burden of proving that subject matter jurisdiction exists." S.M. v. Oxford Health Plans (NY), Inc., 12 Civ. 4679 (PGG), 2013 WL 1189467, at *2 (S.D.N.Y. Mar. 22, 2013) (citing Pan Atl. Grp. v. Republic Ins. Co., 878 F. Supp. 630, 638 (S.D.N.Y. 1995)). "Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper." Goel v. Ramachandran, 823 F. Supp. 2d 206, 210 (S.D.N.Y. 2011) (quoting United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994)).

11

The Second Circuit has held that, "out of respect for the limited jurisdiction of the federal courts and the rights of states, [a court] must resolve any doubts against removability." In re Methyl Tertiary Butyl Ether Prods. Liab. Litig. ("MTBE"), 488 F.3d 112, 124 (2d Cir. 2007) (internal quotation marks and alteration omitted); see also Anwar v. Fairfield Greenwich Ltd., 676 F. Supp. 2d 285, 292 (S.D.N.Y. 2009) ("Any doubts regarding the propriety of removal are resolved in favor of remand, and 'federal courts construe the removal statute narrowly.'" (quoting Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994))). Finally, "[i]n determining whether jurisdiction is proper, [courts] look only to the jurisdictional facts alleged in the Notice[ ] of Removal." Dexia SA/NV v. Bear Stearns & Co., 945 F. Supp. 2d 426, 429 (S.D.N.Y. 2013) (citing MTBE, 488 F.3d at 124).

## C.    Elements of Plaintiff's Claims

### 1.    Abuse of Process

"In New York, 'a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (quoting Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994)). "'Generally in the context of an abuse of process claim, "legal process means that a court issued the process, and the plaintiff will be penalized if he violates it."'" Walia v. Holder, 59 F. Supp. 3d 492, 511-12 (E.D.N.Y. 2014) (quoting Scopo v. Laborers' Int'l Union of N. Am., 11 Civ. 3991 (CBA), 2013 WL 837293, at *5 (E.D.N.Y. Mar. 6, 2013)) (emphasis in original); see also Williams v. Williams, 23 N.Y.2d 592, 596 (1969) ("Process is a 'direction or demand that the

12

person to whom it is directed shall perform or refrain from the doing of some prescribed act.'"
(quoting Matter of Smith, 175 Misc. 688, 692 (Kings Cty. Surrogate's Court 1940)).

## 2. *Prima Facie* Tort

"For an action to lie in prima facie tort, plaintiff must prove the following
elements: (1) intentional infliction of harm; (2) resulting in special damages; (3) without excuse
or justification; (4) by an act that would otherwise be lawful." Jain v. McGraw-Hill Cos., 827 F.
Supp. 2d 272, 279 (S.D.N.Y. 2011) (citing Twin Labs., Inc. v. Weider Health & Fitness, 900
F.2d 566, 571 (2d Cir. 1990)). "'Prima facie tort was designed to provide a remedy for
intentional and malicious actions that cause harm and for which no traditional tort provides a
remedy, and not to provide a catch all alternative for every cause of action which is not
independently viable.'" Id. (quoting Epifani v. Johnson, 65 A.D.3d 224, 232 (2d Dep't 2009)).
Where a prima facie tort claim is "duplicative of . . . plaintiff's other tort claims," it "is
insufficient as a matter of law." Id. (citing Long v. Beneficial Fin. Co. of N.Y., 39 A.D.2d 11, 14
(4th Dep't 1972) ("A cause of action sounding in a known or recognized tort, e.g., intentional
infliction of emotional distress, should not, and indeed cannot, be characterized as a prima facie
tort."); Gertler v. Goodgold, 107 A.D.2d 481, 490 (1st Dep't 1985) (dismissing prima facie tort
claim on the grounds that it was simply a restatement of the plaintiff's breach of contract and
intentional tort claims)).

## II. PLAINTIFF'S MOTION FOR A STAY

### A. Likelihood of Success on Mandamus Petition

In seeking a stay, Plaintiff repeats many of the same arguments made in his
motion for recusal. For example, Plaintiff asserts that

> [t]he Court has viciously and . . . lacking any provocation, evidence or motion
> stigmatized and defamed Plaintiff, consistently pursued a profoundly biased, extrajudicial

13

and punitive policy toward Plaintiff depriving him of any ability to participate in the litigation and the protection of [the Federal Rules of Civil Procedure], policy, statute and basic principles of fairness and judicial administration.

(Sept. 5, 2018 Pltf. Ltr. (Dkt. No. 57) at 1) Plaintiff further complains that this Court stated there was "no point" in entering a case management plan, ordering discovery, referring the matter to a magistrate judge, or "ruling on other motions." (Id.) Finally, Plaintiff contends that "[f]ully matured and briefed motions in this matter including time sensitive and emergency motions are ignored by the Court for hundreds of days including a motion for a Temporary Restraining Order, motions for default judgment, etc. These actions by the Court are not just extrajudicial, biased and abuse of discretion, they are unprecedented." (Id.)

For the reasons stated in this Court's August 8, 2018 Order, however, none of Plaintiff's complaints and arguments have merit. As discussed in the August 8, 2018 Order, the statement allegedly "defaming" Plaintiff was part of a ruling that was favorable to him – a denial of Defendants' well-founded motion for Rule 11 sanctions. Nothing in the August 8, 2018 Order or in the proceedings to date demonstrates that this Court has a deep-seated antagonism towards Plaintiff that makes fair judgment impossible. (Order (Dkt. No. 53) at 10-11; see Liteky, 510 U.S. at 555) Similarly, given Defendant's motion to dismiss, there was "no point in (1) conducting a conference regarding case management or discovery; (2) referring the matter to a magistrate judge; (3) allowing discovery; or (4) ruling on other motions." (Id. at 9) Finally, as discussed in the August 8, 2018 Order, Plaintiff's motion for a temporary restraining order had no merit. (Id. at 11)

Finally, mandamus petitions face an exceedingly high bar. Plaintiff must show that this Court's decision was a "clear and indisputable" abuse of discretion. See In re Basciano, 542 F.3d at 955-56. The Court concludes that Plaintiff has not demonstrated a likelihood of

14

success on his mandamus petition. Accordingly, his request for a stay pending resolution of his

mandamus petition will be denied.[4]

## III. SUBJECT MATTER JURISDICTION

### A. Plaintiff's Claims Do Not Necessarily Raise Any Substantial Federal Issues

#### 1. Federal Issues Are Not Necessarily Raised

Defendants argue (Def. Br. (Dkt. No. 54) at 10) that Plaintiff's claims

"necessarily raise significant, disputed issues of federal law":

> Because Plaintiff's claims are premised entirely on allegations that Rabobank's
> court filings in Plaintiff's First Action violated the Federal Rules and were filed
> without justification under the Federal Rules to obtain a collateral objective
> outside the legitimate ends of the Federal Rules (i.e., allegedly to suppress
> "whistleblowing"), their resolution requires the interpretation of federal law and
> will turn on significant, disputed federal issues – namely: (i) whether Plaintiff is
> eligible for any protections under the federal whistleblower incentives and
> protection statute at all and, if so, whether Rabobank's Motion to Dismiss and
> Sanctions Motion constitute suppression of "whistleblowing" under that statute,
> (ii) whether Rabobank's Motion to Dismiss and Sanctions Motion were
> authorized and appropriate under the Federal Rules or instead violated the Federal
> Rules, and (iii) whether the Court's September 30, 2017 Order precludes any
> argument that Rabobank's motions were filed *without excuse or justification*.

(Id. at 11 (emphasis in original)) Although the Current Action will require a court to analyze

Defendants' conduct in the Previous Action, this Court disagrees that any of the questions cited

by Defendants necessarily involve federal issues.

Defendants' first argument – that Plaintiff's claims require a court to interpret

"whether Plaintiff is eligible for any protections under the federal whistleblower and incentives

and protections statute" (id.) – is misplaced. Indeed, Plaintiff does not cite the federal

whistleblowing statute, except for the purpose of stating that the SEC has an obligation to not

disclose the identity of whistleblowers. (Cmplt. (Dkt. No. 1-1) ¶ 58 n.54 ("SEC 'shall not

---

[4] Because Plaintiff has not demonstrated a likelihood of success on the merits of his mandamus petition, this Court does not reach the other three factors making up the stay analysis.

disclose any information, including information provided by a whistleblower to the Commission, which could reasonably be expected to reveal the identity of a whistleblower.'" (quoting 15 U.S.C. § 78u-6(h)(2)(A)))[5]

Defendants' argument conflates two questions – first, whether Plaintiff is entitled to protection under the federal whistleblowing statute; and second, whether Defendants sought to punish Plaintiff in the Previous Action for his alleged "whistleblowing." Plaintiff's abuse of process claim is based on a theory that Defendants' conduct in the Previous Action was motivated by a desire to punish him for his alleged whistleblowing. Plaintiff need not be entitled to protection under the federal whistleblowing statute in order for such a theory to succeed, however. Plaintiff may be a "whistleblower" in the colloquial sense, even if he is not entitled to protection under a federal statute.[6] In sum, the issue presented by Plaintiff's abuse of process claim is not whether he qualifies as a "whistleblower" under federal law, but rather whether Defendants acted for the purpose of punishing him for providing negative information to regulatory authorities. This issue does not present a question of federal law.

Defendants next argue that Plaintiff's lawsuit presents an issue as to "whether Rabobank's Motion to Dismiss and Sanctions Motion were authorized and appropriate under the Federal Rules or instead violated the Federal Rules." Defendants contend that this issue necessarily involves a substantial question of federal law. (Def. Br. (Dkt. No. 54) at 11) Plaintiff's claim does not depend on whether Defendants violated the Federal Rules of Civil

---

[5] The Complaint more generally asserts that "[a]gencies recognize Whistleblowing as vital to their effectiveness and punish suppression of Whistleblowing." (Cmplt. (Dkt. No. 1-1) ¶ 15)
[6] The applicable federal statute defines "whistleblower" as "any individual who provides . . . information relating to a violation of the securities laws to the [Securities and Exchange Commission], in a manner established, by rule or regulation, by the Commission." 15 U.S.C. § 78u-6(a)(6). This statute protects whistleblowers from retaliation only by employers, however, id. § 78u-6(h)(1)(A), and there is no claim here that Plaintiff was employed by any of the Defendants.

16

Procedure, however. While Plaintiff claims that "Defendants['] abuse of process sought and achieved collateral objectives that not only were not anticipated by the [Federal] Rules but directly violated the Rules['] letter and purpose" (Cmplt. (Dkt. No. 1-1) ¶ 107; see also id. ¶ 109), it is clear from context that Plaintiff is suggesting that Defendants' conduct may have violated Rule 11. (See id. ¶ 108 ("'[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts.'" (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990)))) But the Current Action is not brought under Rule 11, and Plaintiff's claims do not require a court to determine whether Defendants violated Rule 11.

As to "whether the Court's September 30, 2017 Order precludes any argument that Rabobank's motions were filed *without excuse or justification*" (Def. Br. (Dkt. No. 54) at 11 (emphasis in original)), this Court denied Defendants' motion for sanctions (Sept. 30, 2017 Order (Dkt. No. 74) at 17-18, 16 Civ. 6577), and it is Defendants' sanctions motion that provides the primary basis for the Current Action. (See, e.g., Cmplt. (Dkt. No. 1-1) ¶¶ 5 & n.5, 7 & nn. 8-9, 8, 22, 43, 45, 48, 76, 91, 100-102, 108-109). While this Court granted Defendants' motion to dismiss, and noted that Plaintiff's claims were "frivolous" (Sept. 30, 2017 Order (Dkt. No. 74) at 17-18, 16 Civ. 6577), it made no findings as to Defendants' purpose in bringing the motion for sanctions.

In discussing the abuse of process tort, the New York Court of Appeals has stated that the "excuse or justification" offered by a defendant must be one "which the law will recognize," and "[u]nderlying the question of excuse or justification . . . is the question of whether the public's gain outweighs the harm to another." ATI, Inc. v. Ruder & Finn, Inc., 42 N.Y.2d 454, 459 (1977) (citations omitted). The focus of the analysis under the abuse of process

17

tort will thus not be the merits of the motions Defendants filed in the Previous Action, but instead Defendants' motivation for filing the motions – particularly the sanctions motion – and whether the "excuse or justification" offered by Defendants is one "the law will recognize." This inquiry was not part of the Previous Action.

## 2. Even If There Are Necessary Federal Issues, the Issues Are Not Substantial

Even assuming arguendo that Plaintiff's claims in the Current Action necessarily involve an issue of federal law, issues of state law will likely predominate, leaving any possible federal issues to the periphery. As to the abuse of process claim, "'[g]enerally in the context of an abuse of process claim, "legal process means that a court issued the process, and the plaintiff will be penalized if he violates it."'" Walia v. Holder, 59 F. Supp. 3d 492, 511-12 (E.D.N.Y. 2014) (quoting Scopo v. Laborers' Int'l Union of N. Am., 11 Civ. 3991 (CBA), 2013 WL 837293, at *5 (E.D.N.Y. Mar. 6, 2013)) (emphasis in original); see also Williams v. Williams, 23 N.Y.2d 592, 596 (1969) ("Process is a 'direction or demand that the person to whom it is directed shall perform or refrain from the doing of some prescribed act.'" (quoting Matter of Smith, 175 Misc. 688, 692 (Kings Cty. Surrogate's Court 1940))). Accordingly, a central question in the litigation of Plaintiff's abuse of process claim will be whether any of Defendants' actions constitute "process" for purposes of an abuse of process claim. That inquiry presents a question of state law.

Similarly, as to Plaintiff's claim for prima facie tort, where such a claim is "duplicative of . . . plaintiff's other tort claims" it "is insufficient as a matter of law." Jain v. McGraw-Hill Cos., Inc., 827 F. Supp. 2d 272, 279 (S.D.N.Y. 2011) (citing Long v. Beneficial Fin. Co. of N.Y., 39 A.D.2d 11, 14 (4th Dep't 1972) ("A cause of action sounding in a known or recognized tort, e.g., intentional infliction of emotional distress, should not, and indeed cannot,

18

be characterized as a prima facie tort."); Gertler v. Goodgold, 107 A.D.2d 481, 490 (1st Dep't 1985) (dismissing prima facie tort claim because it was simply a restatement of plaintiff's breach of contract and intentional tort claims)). Given that here the same facts appear to provide the basis for the abuse of process claim and the prima facie tort claim, a key issue in resolving Plaintiff's claims will be whether his prima facie tort claim is duplicative of his abuse of process claim. This inquiry likewise presents a question of state law.

The Court concludes that as to both of Plaintiff's claims, state law issues are likely to predominate. Any potential federal issues are not likely to be substantial. Remand is appropriate in such circumstances.

Gunn v. Minton, 568 U.S. 251 (2013), is instructive. In that case, plaintiff brought a malpractice action in Texas state court against the attorneys who had represented him in a patent infringement case. Gunn, 568 U.S. at 254-55. Plaintiff claimed that "his attorneys' failure to raise [an] experimental-use argument earlier had cost him the lawsuit and led to invalidation of his patent." Id. at 255. The Texas state court rejected plaintiff's claim, and on appeal, plaintiff argued that the Texas court had lacked jurisdiction to hear his case, because it "arose under" under 28 U.S.C. § 1338(a), which provides that federal district courts shall have exclusive jurisdiction over patent cases. Id. A divided panel of the Court of Appeals of Texas rejected this argument, but the Supreme Court of Texas reversed. Id. at 255-56.

The Supreme Court held that plaintiff's claim did not "arise under" patent law for purposes of Section 1338(a).[7] Although a federal issue was necessarily raised and actually disputed, the federal issue was not "substantial." In reaching this conclusion, the Court noted that "[b]ecause of the backward-looking nature of a legal malpractice claim, the question is

---

[7] The Court noted that it interprets "arising under" in Sections 1331 and 1338(a) as having the same meaning. Id. at 257.

19

posed in a merely hypothetical sense: If [Plaintiff's] lawyers had raised a timely experimental-use argument, would the result in the patent infringement proceeding have been different? No matter how the state courts resolve that hypothetical 'case within a case,' it will not change the real-world result of the prior federal patent litigation. [Defendant's] patent will remain invalid." Id. at 261.

The Court also concluded that permitting state courts to resolve such cases would not undermine the uniform body of patent law. Id. at 261-62.

Finally, the Court rejected the idea that "the federal courts' greater familiarity with patent law means that legal malpractice cases like this one belong in federal court." Id. at 263. "[T]he possibility that a state court will incorrectly resolve a state claim is not, by itself, enough to trigger the federal courts' exclusive patent jurisdiction, even if the potential error finds its root in a misunderstanding of patent law." Id.

In sum, while the Court concluded that "[t]here is no doubt that resolution of a patent issue in the context of a state legal malpractice action can be vitally important to the particular parties in that case[,]. . . . something more, demonstrating that the question is significant to the federal system as a whole, is needed. That is missing here." Id. at 263-64.

Here, any federal issues that might be raised in the Current Action are not sufficiently substantial to justify the exercise of federal jurisdiction. As in Gunn, the claims in the Current Action are necessarily "backward-looking," and nothing in Plaintiff's claims would change the "real-world result" that this Court dismissed Plaintiff's claims in the Previous Action. Moreover, allowing a state court to resolve this type of case would not undermine any of the bodies of federal law that were involved in the Previous Action, which included federal securities law, antitrust law, RICO, criminal law, and civil rights law. (See Sept. 30, 2017 Order

20

(Dkt. No. 74) at 8-12, 16 Civ. 6577). The claims in the Current Action do not involve a direct analysis of the merits of Plaintiff's claims in the Previous Action. To the extent that Plaintiff characterizes himself as a "whistleblower," as discussed above, that characterization does not implicate the federal whistleblower statute. And to the extent that Plaintiff will argue that Defendants' sanctions motion was not warranted under Fed. R. Civ. P. 11, as discussed above, that issue will turn on state law, and "the possibility that a state court will incorrectly resolve a state claim is not, by itself, enough to trigger the federal courts' . . . jurisdiction, even if the potential error finds its root in a misunderstanding of [Rule 11]." Gunn, 568 U.S. at 263. "Nor will allowing state courts to resolve [abuse of process] cases undermine 'the development of a uniform body of . . . law [regarding Rule 11]." Id. (quoting Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 162 (1989)).

    Finally, although this Court would be more familiar with the proceedings in the Previous Action than a state court – just as the federal district court in Gunn that tried plaintiff's patent claim would have had greater familiarity with the issues in that case – this fact alone does not justify the exercise of federal jurisdiction, particularly where Plaintiff has brought state claims that will turn on state law. See Gunn, 568 U.S. at 263 ("Nor can we accept the suggestion that the federal courts' greater familiarity with patent law means that legal malpractice cases like this one belong in federal court."); In re Standard & Poor's Rating Agency Litig., 23 F. Supp. 3d 378, 413-14 (S.D.N.Y. 2014) (granting remand in multidistrict litigation premised on state consumer protection statutes; "as any student of the Constitution knows, efficiency is not the only interest served by this country's federalist system of state and federal courts"; federal jurisdiction does not lie "merely because litigation in federal court might be more efficient").

In sum, as in Gunn, there is nothing in this case that "demonstrat[es] that the [federal] question [raised] is significant to the federal system as a whole." Gunn, 568 U.S. at 264. Accordingly, remand is appropriate.

None of the cases cited by Defendants (Def. Br. (Dkt. No. 54) at 11-12) are to the contrary. In Reserve Mgmt. Co. v. Willkie Farr & Gallagher LLP, 11 Civ. 7045 (PGG), 2012 WL 4378058 (S.D.N.Y. Sept. 25, 2012), plaintiff filed a malpractice action in New York state court arising out of legal advice provided by defendant to plaintiff's money market fund in the wake of the Lehman Brothers bankruptcy; defendant removed the case to federal court; plaintiff moved to remand; and the motion to remand was denied. Id. at *1. In denying plaintiff's motion to remand, however, the Court ruled that plaintiff's claim turned on a matter of federal law: "[Plaintiff] must prove – as an element of its prima facie case – that it suffered a compensable loss that was proximately caused by [defendant's] breach of its duty. . . . [T]o prove the proximate cause element of its malpractice claim, [Plaintiff] must show that it did not violate the federal securities laws . . . ." Id. at *6 (emphasis added)) Accordingly, in Reserve Mgmt. Co., federal law controlled as to an element of Plaintiff's prima facie case. Such is not the case here.

The same analysis applies to Nazzaro v. Balber, 5 Civ. 2172 (CSH), 2005 WL 1251785 (S.D.N.Y. May 25, 2005), also cited by Defendants. In that case, plaintiffs filed a malpractice action in New York state court arising out of litigation concerning benefit claims under their ERISA plan. See id. at *1-2. As in Reserve Mgmt. Co., the court found that plaintiffs' malpractice claim necessarily depended on federal law:

> [P]laintiffs . . . intend to attempt to establish that the defendants were negligent in their representation with respect to federal claims: that they were entitled to severance pay and/or deferred compensation arising from their ERISA benefits plans, perhaps on a theory that their rights had vested prior to termination of their employment contracts; or that plaintiffs were entitled to compensation from the [Federal Deposit Insurance Corporation] arising under [the Financial Institutions Reform, Recovery, and

22

Enforcement Act]. . . . [P]laintiffs' pleading compels the inference that plaintiffs intend to argue underlying claims arising from federal law in their suit for malpractice against their former counsel.

Id. at *5-6. Again, in the Current Action, none of the elements of Plaintiff's claims are based on federal law.

> In Hodges v. Demchuk, 866 F. Supp. 730 (S.D.N.Y. 1994), a

> complaint filed in state court allege[d] that in the course of conducting discovery or complying with discovery requests in [plaintiff's] two pending federal civil rights lawsuits . . . (collectively the "Federal Actions"), the defendants used their official positions to retrieve or otherwise gain access to certain confidential medical and psychiatric records in violation of [plaintiff's] right to privacy. The complaint further asserts that the defendants' unauthorized access to plaintiff's medical records led Judge Robert P. Patterson of the Southern District of New York to compel disclosure of additional medical and psychiatric records in the Federal Actions.

Id. at 732. The pro se plaintiff claimed that the records at issue were privileged from disclosure under New York Civil Practice Law & Rule § 4504(a), which "prohibits health professionals from disclosing any information acquired in the course of attending a patient in a professional capacity." Id. at 733. Defendants removed the case; plaintiff moved to remand; and the district court denied the motion.

> Defendants argued that the alleged privacy violations stated a civil rights claim

under Section 1983, but the court noted that the allegations in the complaint,

> under the liberal construction afforded pro se complaints, may also plead a claim under New York's personal privacy protection law. Public Officers Law § 96 . . . prohibits state agencies from, inter alia, disclosing "patient records concerning mental disability or medical records where such disclosure is not otherwise required by law." See also N.Y. Public Officers Law § 97 (McKinney's 1994) (creating private right of actions to redress such violations).

Id. As such, the court held that "[b]ecause plaintiff's claims are not exclusively federal in nature, the narrow 'artful pleading' exception to the 'well-pleaded complaint' rule, which prevents a

plaintiff from defeating removal by casting a federal claim in state guise, does not sustain

removal in this case." Id. at 733.

The court nonetheless denied the motion to remand, holding that plaintiff's case

involved substantial questions of federal law:

> [T]he federal element of plaintiff's state claims is certainly substantial since the
> alleged unlawful disclosures of plaintiff's psychiatric and medical records
> occurred in the course of conducting discovery in the Federal Actions. Under
> N.Y. Public Officers Law § 96(1)(f), "[n]o agency may disclose any record or
> personal information unless such disclosure is . . . specifically authorized by
> statute or federal rule or regulation." Subsection 96(1)(k) of that statute further
> exempts disclosures "to any person pursuant to a court ordered subpoena or other
> compulsory legal process." Federal practice and procedure, therefore, is at the
> heart of plaintiff's state law claims, as federal rules governing discovery
> necessarily will determine the propriety of any disclosures of plaintiff's
> confidential records by the various defendants. Consequently, this Court
> possesses federal question jurisdiction over plaintiff's state law claims, and
> removal of this action pursuant to 28 U.S.C. § 1441(b) is, therefore, proper.

Id.

Unlike in Hodges, where "federal rules governing discovery necessarily . . .

determine[d] the propriety of any disclosures of plaintiff's confidential records by the various

defendants," id., in this case, the Federal Rules of Civil Procedure are not central to Plaintiff's

case. Plaintiff's claims do not depend on a finding as to whether he violated Rule 11 – rather,

the central inquiry is whether Defendants acted with an improper purpose.

In Martin-Trigona v. Brooks & Holtzman, 551 F. Supp. 1378 (S.D.N.Y. 1982),

also cited by Defendants, plaintiff filed a Chapter 11 petition in Bankruptcy Court for the

Southern District of New York. That case was transferred to the District of Connecticut. Id. at

1380. A bankruptcy case involving the company of which plaintiff was the sole stockholder was

also transferred from the Bankruptcy Court for the Southern District of New York to the District

of Connecticut. Plaintiff appealed the decision transferring the company's case to the district

24

court, and lawyers for the Trustee of the corporate debtor moved to intervene to challenge the appeal. After plaintiff pointed out to the Trustee's lawyers that they were not admitted to practice in the Southern District of New York, one of the lawyers asked a colleague to move for his admission pro hac vice, and the lawyer did so. Id. at 1380-81.

Plaintiff then filed an action in New York state court against the movant and the Trustee's lawyers for abuse of process, contending that the pro hac vice motion was an abuse of the judicial process in which the attorneys joined an "existing conspiracy to defraud plaintiff of his property and injure him in his business." Id. at 1380. Defendants removed the action to federal court; Plaintiff moved to remand; and the district court denied the motion. Id. at 1380-81.

Plaintiff argued before the district court that the movant attorney had no right to appear in bankruptcy court to file the pro hac vice motion, and that no attorney may appear in bankruptcy court for another attorney or the debtor without prior approval of the court. Id. at 1382. The district court concluded that the remand motion should be denied, because

> [t]he hard core of plaintiff's claim centers about the employment of counsel for trustees under the federal bankruptcy law and the power of trustees to act thereunder, as well as local United States District Court rules pertaining to the admission of attorneys pro hac vice. Similarly, plaintiff's claim for injunctive relief barring the defendants from claiming to represent parties relates to representation in the United States District Court for this district or another federal district under the local rules. All claims center about and challenge an order of this Court which granted an application of an out-of-state attorney to appear in a proceeding pursuant to the local rules of the court. Since the complaint on its face requires determination of the meaning and application of federal law and related rules and local rules governing the admission of attorneys, and because the federal question in the case is a pivotal one, the action arises under federal law . . . .

Id.

25

Accordingly, in Martin-Trigona, the court was called upon to make a determination regarding the powers of federal bankruptcy trustees and the proper application of this court's Local Rules regarding the admission of attorneys pro hac vice. No similar interpretation of federal law or the Federal Rules is required here, and – unlike in Martin-Trigona – no federal issue is "pivotal" to the Current Action.[8]

Finally, in U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383 (3d Cir. 2002), plaintiffs argued that in a previous action in which defendants had sought writs of maritime attachment, defendants misled the court by "cit[ing] as governing law an opinion of the Court of Appeals for the Eleventh Circuit, rather than the Supplemental Rules for Admiralty Claims." Id. at 387. The district court initially granted the attachments, but later vacated its order, "concluding that its decision to depart from the restrictions imposed by Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure . . . was in error." Id. Plaintiffs then filed an action in Pennsylvania state court, arguing that defendants had secured the writs of attachment in violation of Rule B and that they acted in bad faith in seeking the attachments. Id. In its state court action, plaintiffs alleged, inter

---

[8] The Martin-Trigona court also applied a much less restrictive standard for "arising under" jurisdiction than applies today. Under the looser standard – drawn from T. B. Harms Co. v. Eliscu, 339 F.2d 823, 827 (2d Cir. 1964) – "a case may 'arise under' a law of the United States if the complaint discloses a need for determining the meaning or application of such a law." Id.; see Martin-Trigona, 551 F. Supp. at 1381-82. The current test for "arising under" jurisdiction is much stricter: "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn, 568 U.S. at 258.

For the same reason, Nationwide Charters & Conventions, Inc. v. Garber, 254 F. Supp. 85, 87-88 (D. Mass. 1966) – a more than fifty-year-old case also cited by Defendants – is not persuasive. To the extent that the court there found that it was not "necessary to spell out" what federal law was invoked to justify federal question jurisdiction, or that the court could maintain jurisdiction because of the "federal interest[s]" alone, such an approach is improper today.

alia, abuse of process, conspiracy, and wrongful use of civil proceedings. Defendants removed

the case to federal court; plaintiffs moved to remand; the district court denied the motion; and the

Third Circuit upheld that denial. Id. at 387-88.

In upholding the denial of the motion to remand, the Third Circuit stated:

At the heart of each of the plaintiffs' state law claims is the assertion that the
defendants acted in bad faith by urging the District Court to disregard a federal
rule of procedure, which would have barred the attachments, and to rely instead
on case law, which permitted the seizures. The plaintiffs have thus alleged a
substantial question of federal law involving an apparent clash between a
procedural rule and a contrary holding by a United States Court of Appeals.
Moreover, this conflict arises in the area of maritime attachments, a subject of
particular concern to the federal courts, and one where national uniformity is of
some importance. . . .

Fundamentally, the plaintiffs argue that the Eleventh Circuit opinion is incorrect,
and it is that allegedly erroneous interpretation of federal law upon which their
state claim depends. Where a plaintiff's complaint requires the juxtaposition of a
court of appeals decision and an apparently conflicting procedural rule, the federal
courts may properly claim jurisdiction. This is particularly so where, as here, the
decision in controversy has not been overruled or reversed. . . .

We are persuaded that in the unique circumstances here, the federal issue set forth
in the complaint is an essential element of the plaintiffs' cause of action.
Accordingly, the case was properly removed and the District Court did not err in
denying the motion to remand.

Id. at 391.

In sum, U.S. Express Lines involved "unique circumstances," including a

potential conflict between Rule B of the Supplemental Rules for Certain Admiralty and Maritime

Claims and an Eleventh Circuit decision which was "[a]t the heart of . . . plaintiffs' state law

claims." Id. The Current Action does not present the "unique circumstances" of U.S. Express

Lines, nor have Defendants pointed to an issue of federal law that is as central to Plaintiff's

claims.

## B. Plaintiff Has Not Brought a Federal Whistleblower Claim

27

Defendants argue – in the alternative – that in the Current Action Plaintiff has alleged a federal whistleblowing claim pursuant to 15 U.S.C. § 78u-6, and that this purported claim supports the exercise of federal jurisdiction. Defendants contend that "[a]lthough Plaintiff avoids expressly re-pleading a whistleblower cause of action in light of the September 30, 2017 Order rejecting that claim, it is 'well established that when the question is subject matter jurisdiction, the court is permitted to rely on information beyond the face of the complaint.'" (Def. Br. (Dkt. No. 54) at 15 (quoting In re Petition of Germain, 824 F.3d 258, 261 (2d Cir. 2016) (internal quotation omitted)))

As discussed above, however, this Court does not interpret the Complaint as alleging a cause of action under the federal whistleblower statute. The Complaint pleads two state law causes of action; it does not cite to or otherwise predicate a cause of action on any federal statute. Indeed, in the Complaint Plaintiff pleads that he is asserting no federal claim. (Cmplt. (Dkt. No. 1-1) ¶ 28) "Since the plaintiff is 'the master of the complaint,' the well-pleaded-complaint rule enables him, 'by eschewing claims based on federal law, . . . to have the cause heard in state court.'" Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 831 (2002) (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 398-99 (1987)). While Plaintiff cites a provision from the federal whistleblower statute, 15 U.S.C. § 78u-6(h)(2)(A), he does so only for the purpose of highlighting that the SEC may not disclose a whistleblower's identity. (See Cmplt. (Dkt. No. 1-1) ¶ 58 & n.54) As discussed above, Plaintiff's claims do not require a finding that he is entitled to protection under the whistleblower statute.

Given that Plaintiff has not brought a claim under the federal whistleblower statute, that statute provides no basis for the exercise of federal jurisdiction here.

28

## CONCLUSION

Plaintiff's motion for a stay pending the resolution of his mandamus petition is denied.

Because (1) Plaintiff's claims do not fit within the "special and small category" of cases where federal law does not provide the cause of action but the claims nonetheless "arise under" federal law, Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 699 (2006); and (2) a court "must resolve any doubts against removability," MTBE, 488 F.3d at 124 (internal quotation marks and alteration omitted), this case will be remanded.

The Clerk of Court is directed to close this case and to return the matter to the Clerk of the Supreme Court for the State of New York, New York County. Any other pending motions are moot.

Dated: New York, New York
September 18, 2018

SO ORDERED.

Paul G. Gardephe
United States District Judge